**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| **JOHN DOE #1 AND JANE DOE #1,** **INDIVIDUALLY AND AS PARENTS AND NEXT** **FRIENDS OF John Doe #1M, A MINOR** | |

c/o Murphy, Falcon & Murphy, P.A.
1 South Street, 30th Floor
Baltimore, Maryland 21202

and

**JANE DOE #2,**
**INDIVIDUALLY AND AS PARENT AND NEXT**
**FRIEND OF JOHN DOE #2M, A MINOR**

c/o Murphy, Falcon & Murphy, P.A.
1 South Street, 30th Floor
Baltimore, Maryland 21202

and

**JOHN DOE #3 AND JANE DOE #3,**               Case No.: _478907V_
**INDIVIDUALLY AND AS PARENTS AND NEXT**
**FRIENDS OF JOHN DOE #3M, A MINOR**

c/o Ethridge, Quinn, Kemp, Rowan & Hartinger
33 Wood Lane
Rockville, Maryland 20850

                              Plaintiffs,

v.

**MONTGOMERY COUNTY BOARD OF**
**EDUCATION**
850 Hungerford Drive
Rockville, MD 20850

          <u>Serve on:</u>
          Shebra L. Evans, President
          850 Hungerford Drive
          Rockville, MD 20850

and

1

**CASEY B. CROUSE**
6265 White Birch Road
Sykesville, MD 21784

and

**VINCENT COLBERT**
9509 Greenel Road
Damascus, MD 20872

and

**ERIC WALLICH**
11830 Vineyard Path
New Market, MD 21774

and

**JOSEPH DOODY**
1484 Florence Road
Mt. Airy, MD 21771,

Defendants.

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW, the Plaintiffs, John Doe #1 and Jane Doe #1, individually and as parents and next friends of John Doe #1M, a minor, Jane Doe #2, individually and as parent and next friend of John Doe #2M, a minor, and John Doe #3 and Jane Doe #3, individually and as parents and next friends of John Doe #3M, a minor, each by respective undersigned counsel, files this Complaint, and sues Defendants Montgomery County Board of Education, Principal Casey B. Crouse, former Junior Varsity Football Coach Vincent Colbert, former Varsity Football Head Coach Eric Wallich, and former Athletic Director Joseph Doody and claim damages, demand judgment, and state for cause the following:

2

## INTRODUCTION

This case arises from the longstanding sexual assault practice or ritual at Damascus High School known as "brooming," which refers to a sophomore football player raping a freshman football player by forcibly inserting a pole or broom handle into the anus of the freshman against his will while being physically restrained by his teammates. While brooming did not always devolve into rape, this sexual assault practice was endemic in the Junior Varsity ("JV") football locker room, and it was common for sophomore players on the team to threaten and intimidate the freshmen players by hitting, jabbing, poking, or even raping a teammate with the broom.

For several years, sophomores on the JV football team would sequester freshmen in the JV locker room, forcibly restrain them, and threaten to, attempt to, and/or violently assault them and insert or attempt to the handle of a broom into their rectums. Defendants allowed athletes unsupervised access to the locker room.

Essentially, the JV football locker room at Damascus High School was an unchecked breeding ground for sexual assault committed by other members of the football team. Defendants knew or should have known of the football players abusive and predatory conduct against freshmen football players in the school building, including in the locker room, and, at a minimum, were deliberately indifferent to such behavior. Defendants had extensive notice of the abusive and predatory brooming ritual perpetrated by the football players at Damascus High School yet chose to ignore the danger it posed to the students. As a result of Defendants' conduct, the victims suffered physical injuries and serious and permanent emotional and psychological damage.

This lawsuit is brought by a then freshman member of the 2017 JV football team at Damascus High School was who sexually assaulted by his teammates with a broom in August

2017 and by two freshmen members of the 2018 JV football team at Damascus High School who were sexually assaulted and/or raped by their teammates with a broom on October 31, 2018. The brooming ritual was perpetrated and continued due to decisions made by officials acting with authority within the Montgomery County Public Schools system who had specific knowledge of past instances of sexual assaults in locker rooms. The brooming ritual also was perpetrated and continued due to decisions made by faculty and staff members at Damascus High School that allowed junior varsity football players unsupervised access to the freshman locker rooms. Further, prior to October 31, 2018, Defendants knew that brooming was occurring in the JV locker room as a prior case had been brought to the attention of football coaches and administrators.

Defendants facilitated the predatory conduct by allowing certain athletes to have free reign over the school despite repeated complaints from teachers at Damascus High School, allowing them to access locker rooms and to broom more members of the football team. In fact, Defendants had prior knowledge of the violent history of one of the football players responsible for brooming four of his teammates on October 31, 2018, including the minor Plaintiffs. Defendants knew that this particular student-turned-assailant suffered from a diagnosed, but untreated severe mental disorder, had approximately a dozen in-school suspensions and was expelled from his previous high school for violence. Moreover, in the two months he attended Damascus High School, the assailant physically assaulted a teacher, physically assaulted a special needs student, and had to be monitored by teachers from class to class so as to not cause injuries to other students.

Despite knowing all this, Defendants permitted this 6'1", 240 pound, 15-year-old football player to play football at Damascus High School and remain on the team until October 31, 2018,

when he sexually assaulted four of his teammates with a broom. The decision to permit this young man to transfer and play on the Damascus football team appears related to strengthening, at all costs, the school's highly-touted and revered football team and preserving its more than 50-game national-record winning streak.

The brooming tradition resulted in physical injuries and serious and permanent emotional and psychological damage to these Plaintiffs. Defendants knew or should have known of the brooming ritual and that JV football players at Damascus High School were sexually assaulted and/or raped by other students with the wooden handle of a broom. brooming was common knowledge among Defendants, students, and parents at Damascus High School. Parents, students, and faculty at Damascus High School had expressed concern and/or raised issued about the brooming ritual to Defendants, but they took no action.

After the October 31, 2018 brooming assaults at Damascus High School, Defendants downplayed these incidents, failed to fully investigate, failed to promptly notify parents, failed to ensure that victims received proper medical attention, instructed players not to talk to investigators about the brooming tradition, and continued to support and promote the football program. Defendants placed winning football games above the health and safety of some of its most vulnerable students. Defendants' reckless decisions, gross negligence, and willful indifference to the safety of the JV football players at Damascus High School resulted in profound damage to those who were broomed, witnessed others being broomed, or were threatened with "brooming." The victims will require extended therapy to cope with their shame, fear, and suicidal ideations. Worse still, all of their families have been devastated by what occurred at Damascus High School and what could have been avoided if Defendants had simply acted responsibly and stopped this outrageous and known conduct.

5

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter and all parties pursuant to Md. Code, §§ 6-102 to -103 of the Courts and Judicial Proceedings Article ("C.J.P.").

2.     Pursuant to C.J.P. § 6-201, venue in Montgomery County, Maryland is proper. All material events occurred in Montgomery County, Maryland.

## PARTIES

3.     John Doe #1 and Jane Doe #1, the parents of John Doe #1M, are adult residents of Montgomery County, Maryland. John Doe #1M, a minor, resides in Montgomery County, Maryland. At all times relevant, John Doe #1M was a student at Damascus High School, located in Montgomery County, Maryland. John Doe #1 and Jane Doe #1 sue in both their individual capacities and representative capacities as parents and next friends of John Doe #1M.

4.     Jane Doe #2, the parent of John Doe #2M, is an adult resident of Montgomery County, Maryland. John Doe #2M, a minor, resides in Montgomery County, Maryland. At all times relevant, John Doe #2M was a student at Damascus High School, located in Montgomery County, Maryland. Jane Doe #2 sues in her individual capacity and representative capacity as parent and next friend of John Doe #2M.

5.     John Doe #3 and Jane Doe #3, the parents of John Doe #3M, are adult residents of Montgomery County, Maryland. John Doe #3M, a minor, resides in Montgomery County, Maryland. At all times relevant, John Doe #3M was a student at Damascus High School, located in Montgomery County, Maryland. John Doe #3 and Jane Doe #3 sue in both their individual capacities and representative capacities as parents and next friends of John Doe #3M.

6.     Defendant Montgomery County Board of Education (the "Board" and/or the "Board of Education") constitutes the governing body for the Montgomery County Public Schools

system ("MCPS"). The Board's principal office is located at 850 Hungerford Drive, Rockville, MD 20850. The Board is a corporate body created under Md. Code, § 3-103 of the Education Article.

7.      Defendant Casey B. Crouse is an adult citizen of Maryland and a resident of Carroll County, Maryland. At all times relevant, Ms. Crouse was the principal of Damascus High School and acted in her official capacity as an agent and servant and/or employee of Defendant Montgomery County Board of Education and in her individual capacity.

8.      Defendant Vincent Colbert is an adult citizen of Maryland and a resident of Montgomery County, Maryland. At all times relevant, Mr. Colbert was the coach of the JV football team at Damascus High School and acted in his official capacity as an agent and servant and/or employee of Defendant Montgomery County Board of Education and in his individual capacity.

9.      Defendant Eric Wallich is an adult citizen of Maryland and a resident of Frederick County, Maryland. From 2008 to January 2020, Mr. Wallich was the Head Varsity Football Coach and the Assistant Athletic Director for Damascus High School.  At all relevant times, he acted in his official capacity as an agent and servant and/or employee of Defendant Montgomery County Board of Education and in his individual capacity.

10.    Defendant Joseph Doody is an adult citizen of Maryland and a resident of Howard County, Maryland. At all times relevant, Mr. Doody was the athletic director at Damascus High School and acted in his official capacity as an agent and servant and/or employee of Defendant Montgomery County Board of Education and in his individual capacity.

## FACTS COMMON TO ALL COUNTS

11.     Damascus High School is a public high school located in Damascus, Maryland, and the school is part of the MCPS system. At all times relevant, the school was led by Principal Casey B. Crouse and Assistant Principals Maniya Jules and Adam Saltzman. Principal Crouse was responsible for, among other things, overseeing faculty and staff at Damascus High School and for supervising or directing the supervision of students.

### *Maryland's Best Football Town*

12.     Damascus High School offers several athletic teams, including both varsity and junior varsity football teams. Damascus High School and its community hold themselves out to be "Maryland's best football town." They have a strong booster club, which raised money to recently have the water tower painted with a big "D" overlooking the football field. Damascus' biggest strength is that their players matriculate from youth football at the Damascus Sports Association to the High School in great numbers.

13.     As of the filing of this Complaint, Damascus has won 11 state varsity football titles, over 15 Regional titles, and over 21 Divisional titles. Damascus holds the record for the state of Maryland with 53 straight wins, and at one time held the national record for consecutive wins. As of October 31, 2018, Damascus's JV football had an even longer winning streak.

14.     In 2018, Defendant Wallich was the head coach of the varsity program, and he served as the Assistant Athletic Director for Damascus High School. Based on these positions, Defendant Wallich was vested with broad authority and power at the school and over the athletic program to take corrective action to end any discrimination in the program. For example, Wallich had broad authority to handle or discipline student-athlete misconduct and provide

8

supervision over all student-athletes, including members of the JV football team. Defendant Wallich maintained an office in the locker room.

15.     In 2018, Defendant Colbert was the head coach of the JV program. Defendant Colbert was paid a stipend by Montgomery County to coach the JV team. Defendant Colbert was vested with broad authority and power over the JV football team to take corrective action to end any discrimination in the program. For example, Defendant Colbert possessed the authority to discipline JV football players for misconduct. Additionally, pursuant to his employment contract with Montgomery County, part of his stated duties as head coach was to supervise the JV locker room. Defendant Colbert also maintained an office in the locker room.

16.     Tragically, the Damascus football program has traditions other than winning.  Part of a hazing ritual, brooming is a tradition at Damascus High School among members of the JV football team.  In this ritual, predominately sophomores on the JV football team would attack freshmen teammates with a broom, oftentimes forcibly restraining them, and raping their teammates by inserting or attempting to insert the wooden handle of a broom into their rectums.

17.     Sophomores on the JV football team repeatedly talked about brooming the freshmen players to scare, intimidate, and control them. One of the brooms used for raping or sexually assaulting freshmen was kept in the locker room. This hazing ritual is notorious. In fact, a Snapchat thread was created where JV football members discussed incidents that occurred inside of the locker room. Parents of JV football players talked about the ritual at parties.

**Attempted Teammate Rape during the 2016 Football Season**

18.     During the 2016 football season, sophomores on the JV football team attempted to "broom" at least one freshman football player. Specifically, Victim 1, then a freshman, was

confronted by a group of sophomores and the group attempted to rape, sexually assault, and batter him with a broom. Victim 1 was able to fight off these attackers.

**Teammate Rape, Sexual Assault, and Battery during the 2017 Football Season**

19.    During the 2017 season, numerous freshmen football players were raped, sexually assaulted, and/or battered with the broom or an attempted rape occurred with the broom.

20.    The 2017 season was particularly savage when it came to the number of brooming incidents in the locker room. That year, multiple freshmen were routinely attacked with the broom throughout the year with the sophomore players hitting them with a broom or jabbing, poking, or inserting or attempting to insert the handle a broom into the buttocks of another.  The events of that year were so severe that parents of the freshmen even discussed the issue of brooming between themselves, and siblings of the JV players intervened in an effort to stop the brooming. A cell phone video shot outside the JV locker room by a JV football player shows JV football players grabbing a freshman football player by the arms and escorting him towards another group of JV football players standing nearby, one of whom was holding a broom handle threatening to broom the freshman football player. Incidents like this occurred on a weekly basis. Many freshman football players were too afraid to change clothes in the locker room after practices and/or games for fear of being broomed.

**The Rape, Sexual Assault, and Battery of John Doe #1M**

21.    On or about August 1, 2017, John Doe #1M was inside the freshman locker room at Damascus High School getting ready for JV football practice.

22.    Other JV football players entered the locker room where John Doe #1M was getting ready for JV football practice and turned the lights off.

23.     Two of John Doe #1M teammates, who were sophomores at the time of this incident, approached John Doe #1M, slammed him against the lockers, and tried to pull his football pants down. John Doe #1M fought back against his assailants.

24.     The assailants were unsuccessful at fully pulling down John Doe #1M's pants to expose his buttocks, so instead, they began poking and jamming the end of the broomstick into John Doe #1M's buttocks and rectum through his football pants.

25.     John Doe #1M was able to fight back and free himself from his assailants.

26.     John Doe #1M was threatened with further violence, physical harm, humiliation, embarrassment, and retaliation if he reported the attempted rape, the assault, or the battery to anyone.

27.     During the attempted rape, sexual assault, assault and battery, there were no Montgomery County Public School employees present or supervising the students in or near the locker room area despite this being the football players' designated area to meet and do homework until it was time to prepare for football practice.

28.     During the attempted rape, sexual assault, assault and battery, there were also no Damascus High School coaches, coaching staff, or adults present or supervising the students anywhere in or near the locker room area despite this being the football players' designated area to meet and do homework until it was time to prepare for football practice.

29.     A few days later, while riding in a car to a beach vacation with his mother and a friend of his mother ("Parent 1"), John Doe #1M told Jane Doe #1 and Parent 1 about the brooming.

30.     Upon arriving at their destination, Parent 1 immediately called another Damascus parent, Parent 2. Parent 1 asked Parent 2 for Defendant Colbert's telephone number. As Parent 1

11

explained to Parent 2, Parent 1 wanted to report a hazing incident to Colbert. Parent 2 provided Parent 1 Defendant Colbert's telephone number.

31.     Parent 1 then immediately called Defendant Colbert on the telephone to describe the attempted rape, sexual assault, assault and battery without identifying John Doe #1M. Defendant Colbert, the JV football coach, indicated he would notify Defendant Wallich, the Varsity football coach.

32.     Upon information and belief, Colbert notified Wallich and the school administration at Damascus High School about the attempted rape, sexual assault, assault and battery of John Doe #1M

33.     Additionally, after speaking to Parent 1, Parent 2 also called Defendant Colbert to notify him that he would be receiving telephone calls from parents reporting allegations of severe hazing at Damascus in the locker room.

34.     In or about September 2017, a School Resource Officer, a sworn uniformed law enforcement officer assigned to Damascus High School, and a MCPS Security Officer interviewed John Doe #1M about the August 2017 incident. The Board of Education did not notify John Doe #1M's parents about the meeting.

35.     Given the seriousness of the allegations of the attempted rape, sexual assault, assault and battery, the response by the Defendants amounted to deliberate indifference.

36.     John Doe #1M was threatened with further violence, physical harm, humiliation, embarrassment, and retaliation if he reported the attempted rape, sexual assault, assault and battery to anyone. One of John Doe #1M's attackers again threatened John Doe #1M with further violence, physical harm, humiliation, embarrassment, and retaliation after the October 31, 2018 locker room incident, which is more fully described below.

37.     Moreover, despite the fact that Defendants knew or should have known that John Doe #1M had been victimized by the attempted rape, sexual assault, assault and battery, Defendants failed to protect John Doe #1M from physical violence on two additional occasions.

38.     First, in September 2019, John Doe #1M was again assaulted by one of his same August 2017 attackers, this time just outside the once-again unsupervised football locker room. During this incident, John Doe #1M's attacker made inappropriate comments about a female Damascus student known to John Doe #1M. When John Doe #1M asked why the attacker made those inappropriate comments, the attacker cursed at John Doe #1M and closed fist punched John Doe #1M on the side of the head. John Doe #1M was dazed and his head throbbed for a considerable amount of time. This incident of assault and battery was witnessed by a number of varsity football players.

39.     Then, on November 1, 2019, just before the final regular-season varsity football game, while in the unsupervised weight room with the lights off, an unknown player on the varsity team threw a medicine ball at a fellow teammate, and the teammate responded by assaulting and battering John Doe #1M without consequence by the Defendants.

40.     Since John Doe #1M's assault, in addition to his physical injuries, John Doe #1M has suffered severe psychic injury which has manifested itself physically in the form of stress, anxiety, loss of sleep, loss of appetite, anger outbursts, nightmares, headaches, and stomach pain.

41.     Since John Doe #1M's victimization by attempted rape, sexual assault, assault and battery, John Doe #1M's parents have similarly suffered physical injury and severe psychic injury that has manifested physically in the form of stress, anxiety, loss of sleep, loss of appetite, nightmares, headaches, and stomach pain, as well as lost time from work.

### The Rape, Sexual Assault, and Battery of Victim 2

42.     Upon information and belief, a freshman on the football team, Victim 2, was raped or sexually assaulted with a broom by sophomore teammates during the 2016 or 2017 season.

### The Rape, Sexual Assault, and Battery of Two other Freshmen Football Players

43.     Upon information and belief, during the 2017 football season, in addition to John Doe #1M and Victim 2, at least two other freshman football players were raped or sexually assaulted and battered with a broom by their teammates in the locker room at Damascus High School.

44.     In addition to the reports from Parent 1 and Parent 2 about the locker room assaults, a parent identified as Parent 3 also reported the brooming culture to Damascus coaches in 2017. Parent 3 overheard her two children, both student-athletes at Damascus, discussing brooming incidents in 2016, which made them fearful to change for practice in the locker room. In 2017, after she learned of the John Doe #1M rape, she subsequently telephoned then Damascus JV assistant football coach, Rich Noland, to notify him of the brooming incidents. Noland later told Parent 3 that he spoke with Defendant Colbert who denied brooming occurred at Damascus and claimed that brooming incidents at Damascus were "just rumors".

45.     Defendants knew, or should have known, that the brooming ritual had persisted at Damascus High School for years prior to when these four victims were attacked. However, Defendants never provided any information to the parents of John Doe #1M or Victim 2 that others had been victims of brooming and that Damascus High School had a culture of allowing student-athletes to victimize other student-athletes.

14

46.     At this time, the Damascus football team had won 26 straight games and was coming off a 2016 state championship.  Thus, the Defendants made no efforts to determine the extent of the brooming ritual and have since downplayed these violent attacks of John Doe #1M This indifference caused multiple other players to be broomed during the 2017 and 2018 football seasons.

**Defendant Board was on actual notice that one of the 2018 attackers had previously engaged in known acts of sexual harassment or abuse on school property and during the school day**

47.     One 2018 attacker, J.A. was the ringleader of the group of five sophomore JV football players who raped or sexually assaulted four students in the locker room at Damascus High School on October 31, 2018.

48.     Upon information and belief, during the 2015-2016 school year and 2016-2017 school year, J.A. sexually harassed and/or sexually assaulted one or more female students at Rocky Hill Middle School, a public middle school in Montgomery County, Maryland.

49.     Upon information and belief, the Board of Education had actual knowledge of J.A.'s conduct at Rocky Hill Middle School.

50.     Upon information and belief, during the 2017-2018 school year, while attending Clarksburg High School, J.A. used Grindr, an internet-based dating application "geared toward gay, bi, trans, and queer people," to target a senior at Clarksburg High School during the school day.

51.     Upon information and belief, J.A. and the senior agreed to leave school and meet off-campus for a sexual encounter. When they met, J.A. committed a robbery using physical force to take money from this student. This student reported this robbery to law enforcement.

52.     Upon information and belief, the Board of Education had actual knowledge of J.A.'s commission of this robbery.

53.     The Board and its agents had actual knowledge that this assailant was expelled from another high school within MCPS for violence and was told he would have to attend an alternative school during the 2018-2019 school year.

54.     Despite being told that he would need to attend an alternative school because of his violent behavior, the Board permitted J.A. to become a student at Damascus High School during the 2018-2019 school year.

55.     The Damascus High School Defendants were advised of J.A.'s prior violence and sexual violence upon entry into Damascus High School in 2018.

56.     Upon information and belief, in or about August or September 2018, J.A. intentionally physically struck a teacher at Damascus High School causing injury to the teacher. Upon information and belief, Vice Principal Maniya Jules and Damascus High School staff resolved this issue informally without disciplining J.A. Nonetheless, he was allowed to continue to play football at Damascus High School.

57.     Upon information and belief, the Board of Education had actual knowledge that J.A. assaulted and battered of this teacher.

58.     The Board and its agents had prior knowledge of J.A.'s violent history.

59.     Prior to October 31, 2018, the Board and its agents had actual knowledge that J.A. had received approximately a dozen in-school suspensions, expulsion from his previous high school, and over 100 messages to his mother concerning his behavior.

60.     The response by the Board of Education and its agents to these known acts of sexual harassment or abuse was deliberate indifference.

16

**2018 Football Season**

61.     The pervasive use of brooming to intimidate players continued during the 2018 football season. For example, after the JV team's preseason game against Linganore High School, sophomore players threatened to broom a player if he did not change jersey numbers with another player.

62.     During the 2018-2019 school year, the school day ended at 2:30 p.m. at Damascus High School. During the 2018 football season, JV football practice began at 3:30 p.m. each day. As a result, JV football players had one hour of free time between the end of the school day and the start of football practice. From 2:30 p.m. to 3:30 p.m., the locker room was unsupervised by any adult, coach, teacher, or school official.

63.     During the 2018 football season, neither the coaching staff nor the school administration required JV football players to attend any mandatory study hall or otherwise provide supervision to ensure the safety of its athletes and account for each athlete's whereabouts. JV football players were free to do what they pleased, including leaving the school campus, which JV football players did regularly.   Before October 31, 2018, teachers at Damascus High School repeatedly complained to coaches about their persistent failure to supervise football players during this time frame, but the coaches ignored the teachers' concerns.

64.     Had the Board of Education, its employees, or coaches provided reasonable supervision, sophomore football players would not have been able to rape, sexually assault, assault and/or batter their younger teammates in the locker room.

65.     Not only was actual or threatened sexual assault and battery an endemic problem, but there were also other crime problems in the locker room. For example, in early

October 2018, personal items were stolen from various individuals, including John Doe #4M. Upon information and belief, J.A. stole these items from John Doe #4M, including a gold chain.

66.     The JV football team was undefeated through its first seven games of the season. The JV team's last game of the 2018 season was scheduled for November 1, 2018, against its rival, Sherwood High School.

### October 31, 2018

67.     At approximately 3:00 p.m. on October 31, 2018, several freshman JV players were in the JV locker room at their lockers getting ready for the last practice before the final game of the season.

68.     There were no coaches, teachers, or adult supervision in the locker room.

69.     J.A, C.T., W.S., O.K., and K.L. (the "Attackers") turned off the lights in the locker room.

70.     There is a single door to enter and exit the area of the JV locker room where the rapes occurred. This exit was obstructed by one or more of the Attackers to prevent the individuals below from exiting.

71.     The Attackers proceeded to rape or attempt to rape, sexually assault, and batter the four freshmen— John Doe #2M, John Doe #3M, John Doe #4M, and Victim 3—with a broom. Immediately after an attempt to rape one victim, Victim 1, that individual then proceeded to attempt to rape the last victim, John Doe #2M.

### The Rape, Sexual Assault, and Battery of John Doe #4M

72.     After the lights went out, one of the student perpetrators yelled, "Get [John Doe #4M]," and the Attackers ran to the location where John Doe #4Mwas standing.

73.     J.A., C.T., W.S. and K.L. physically grabbed John Doe #4M.

18

74.    J.A., C.T., W.S. and K.L. worked in concert with each other to victimize John Doe #4M, including holding him over a bench and punching him violently.

75.    J.A., C.T., W.S. and K.L. pulled down John Doe #4M's pants. They raped John Doe #4M by inserting the end of a broomstick into John Doe #4M's buttocks and rectum.

76.    During the rape and assault, there were no Montgomery County Public School employees present or supervising the students in or near the locker room area despite this being the football players' designated area.

77.    During the rape and assault, there were also no Damascus High School coaches, coaching staff, or adults present or supervising the students anywhere in or near the locker room area.

78.    During the rape and assault, there were no Damascus High School staff members of administrative personnel present or supervising the students in or near the locker room area.

79.    John Doe #4M was threatened with further violence, physical harm, humiliation, embarrassment, and retaliation if he reported the rape, sexual assault, assault and battery to anyone.

80.    John Doe #4M suffered and continues to suffer profound and permanent injuries. John Doe #4M consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to his detriment.

81.    John Doe #4M was also deprived of education opportunities and soon after transferred to another high school.

19

### *The Rape, Sexual Assault, and Battery of John Doe #3M*

82.     Approximately four of the Attackers grabbed John Doe #3M and threw him to the ground. The assailants worked in concert with each other to victimize John Doe #3M, including holding him over a bench and punching him violently.

83.     The assailants pulled down John Doe #3M's pants. They inserted the end of a broomstick into John Doe #3M's buttocks and rectum.

84.   During the rape, attempted rape, sexual assault, assault and battery, there were no Montgomery County Public School employees present or supervising the students in or near the locker room area despite this being the football players' designated area.

85.   During the rape, attempted rape, sexual assault, assault and battery, there were also no Damascus High School coaches, coaching staff, or adults present or supervising the students anywhere in or near the locker room area.

86.   During the rape, attempted rape, sexual assault, assault and battery, there were no Damascus High School staff members of administrative personnel present or supervising the students in or near the locker room area.

87.   The perpetrators threatened John Doe #3M with further violence, physical harm, humiliation, embarrassment, and retaliation if he reported the rape, attempted rape, sexual assault, assault and battery to anyone.

88.   Defendants knew, or should have known, that other students were victims of brooming and that the brooming ritual had persisted at Damascus High School for years before John Doe #3M was attacked.

89.   Defendants never provided any information to any of the victims that others had been victims of brooming and that Damascus High School had a culture of allowing student-athletes to victimize other student-athletes.

90.   Defendants made no efforts to determine the extent of the brooming ritual and have since downplayed these violent attacks.

91.   Since John Doe #3M was raped, sexually assaulted, assaulted and battered, John Doe #3M has suffered severe physical and psychic injury which has manifested itself physically in the form of stress, loss of sleep, loss of appetite, nightmares, headaches, and stomach pain.

92.   Since John Doe #3M was raped, sexually assaulted, assaulted and battered, John Doe #3M's parents have similarly suffered severe psychic injury which has manifested itself physically in the form of stress, loss of sleep, loss of appetite, nightmares, headaches, and stomach pain.

### *Attempted Rape, Sexual Assault, and Battery of Victim 3*

93.   The Attackers proceeded to attempt to rape Victim 3.

94.   The Attackers were unsuccessful in raping Victim 3, but they did physically assault him.

95.   Victim 3 then decided to assist the Attackers to attempt to rape another player, John Doe #4M.

### *Attempted Rape, Sexual Assault, and Battery of John Doe #2M*

96.   John Doe #2M was getting ready for football practice when he saw the Attackers.

97.   Someone yelled "Get [John Doe #4M];" and the Attackers ran to where John Doe #4M was located.

98.   John Doe #2M ran into a bathroom to avoid being attacked and remained there for several minutes.

99.   After he exited the bathroom, he returned to his locker, and J.A. grabbed him and threw him to the floor.

100.   C.T. and W.S. hit and stomped on John Doe #2M while Victim 3 held the broom.

101.   J.A. attempted to remove John Doe #2M's pants while Victim 3 poked the broom at John Doe #2M's rectum in an attempt to rape him. During this attempt, the Attackers and Victim 3 sexually assaulted, assaulted, and battered John Doe #2M.

102.   John Doe #2M was able to prevent J.A. from removing his pants.

103.   Victim 3 eventually dropped the broom and left the locker room.

104.   John Doe #2M was able to free himself from his attackers and fled the locker room in tears.

105.   As a result, and in addition to his physical injuries, John Doe #2Mhas suffered severe psychic injury which has manifested itself physically in the form of stress, loss of sleep, loss of appetite, nightmares, headaches, and stomach pain.

106.   Since  John Doe #2M's assault,  Jane Doe #2 has similarly suffered severe psychic injury which has manifested itself physically in the form of stress, loss of sleep, loss of appetite, nightmares, headaches, and stomach pain as well as lost time from work.

107.   Upon information and belief, several JV football players observed the Attackers raping or attempting to rape the four freshman victims from behind an interior window inside the JV locker room. Not a single person came to assist these victims, provide aid, or attempt to stop the attack. The culture that existed inside the locker room led many members of the team to

tolerate this sexual abuse and even view it as acceptable or be so fearful of being victimized themselves that it led to their inaction.

108.   During the violent attacks and rapes, one or more of the victims were told by the suspects if they disclosed any information to anyone as to what had occurred, they would be physically injured.

109.   After these horrific incidents of sexual abuse, the team held its last football practice of the season that afternoon.

110.   Due to the fear of additional physical harm, threats, humiliation, and embarrassment, the victims were initially reluctant to disclose what occurred in the JV locker room.

### School Employees and Agents Learn of the Rapes and Attempted Rapes

111.   After practice, John Doe #3M disclosed the sexual abuse to his father, John Doe #3, who promptly reported the abuse to Defendant Colbert.

112.   It was clear and obvious at the football practice on October 31 that this John Doe #3M had been traumatized. He cried at times during the practice.

113.   Most, if not all, of the players were aware of the rapes that occurred immediately prior to practice but none of the players came forward to report these rapes.

114.   Upon learning of at least one of the rapes, Defendant Colbert stated that he would inform Defendant Wallich and additional school administration officials, including Defendant Crouse. However, Defendants took no further action to notify parents, remove the Attackers from school, or to otherwise ensure the safety of the boys on the JV football team.

115.   Upon information and belief, after practice, during the evening hours of October 31, 2018, Principal Crouse, Athletic Director Doody, Varsity Coach Wallich, and JV Coach

Colbert learned about and discussed the rapes that occurred in the JV locker room before practice by group text message in the hours after the rapes were reported to them.

116. Before the rapes and attempted rapes occurred on October 31, 2018, the Board of Education and law enforcement had entered into a Memorandum of Understanding to establish and implement a protocol for responding to crimes that impact schools in Montgomery County Maryland. The Memorandum of Understanding delegates duties to law enforcement and school personnel, providing that "[t]he principal is responsible for administering and supervising the total school program, including the safety and security for students and staff and providing educational leadership for the students and staff consistent with the educational goals of the community." It further provides that "MCPS shall immediately notify the appropriate law enforcement agency of all critical incidents," which includes any rapes that occur on school property. Principal Crouse, Athletic Director Doody, Varsity Coach Wallich, and JV Coach Colbert failed to immediately notify law enforcement of the rapes and attempted rapes on October 31, 2018.

117. Defendant Board's policy on "Child Abuse and Neglect" in effect at the time provided that "[p]rior to making a report to CPS, it is not the role of any MCPS employee, contractor, or volunteer to investigate or determine the validity of a case of suspected abuse and/or neglect." This policy further provides that, "[i]f an individual has any doubt about whether to report suspected abuse and/or neglect, he/she shall err on the side of reporting the allegation to CPS."

118. Instead of immediately notifying the police department or Child Protective Services, Coach Colbert enlisted one or more of his players to contact JV players to investigate the parent's report that one or more players had been raped by their teammates.

24

119. One player conducted his investigation by texting one victim, "This is important" and "Who gave the broom"?  Given the absence of any need to explain what "the broom" referenced, this communication reflected an obvious familiarity with the rape ritual.

120. Defendants failed to notify law enforcement authorities immediately after learning of the rapes as agreed upon in the Memorandum of Understanding the school system had with Montgomery County law enforcement agencies.

121. By failing to notify law enforcement officers immediately, law enforcement officers were unable to maintain and preserve the crime scene.

122. By failing to timely notify law enforcement authorities, investigators were delayed in investigating, including interviewing witnesses and suspects, making arrests, and recovering evidence.

123. Most importantly, by failing to notify law enforcement officers immediately, the victims were delayed in receiving treatment.

124. Defendants failed to notify the parents of JV football team members, particularly the victims of the brooming, after they had full knowledge of the incident.

125. Moreover, with the intention to protect its football program, the Defendants violated Md. Code Ann., Fam. Law § 5-704, which requires that educators, among others, notify the appropriate authorities "as soon as possible" and submit a "written report" within 48 hours if the educator has "reason to believe that a child has been subjected to abuse or neglect."

126. Neither the Defendant Board of Education nor its employees contacted any of the victims' parents to inform the parents that their teammates had raped or attempted to rape their children.

127. Moreover, current coaches at Damascus High School have instructed current players not to talk to with investigators about the brooming tradition. These include current players who participated in and have specific knowledge of the sexual assaults that occurred in 2017, who recently informed investigators, "Coach says not to talk to you."

### November 1, 2018

128. On the morning of November 1, 2018, Principal Crouse made an announcement over the school public address system ordering all Damascus High School JV Football players to meet inside the building.

129. Approximately 25 of the JV Football players followed her command and reported for the meeting. None of the Attackers attended this meeting with Principal Crouse. During this meeting, Principal Crouse proceeded to condemn and chastise all attending football players, including the victims, as well as witnesses alike. She also accused the team of "ruining Coach Colbert's win streak."

130. Montgomery County Police Special Victims Division responded to the scene and obtained a Montgomery County Circuit Court Search Warrant to search the crime scene. Law enforcement recovered, among other things, the broomstick used to rape these children.

131. At least two of the victims were transported to Shady Grove Adventist Hospital where hospital personnel performed a Sexual Assault Forensics Evidence Recovery exam.

### The Board of Education had actual knowledge of known acts of sexual harassment or abuse before October 31, 2018.

132. Prior to October 31, 2018, Defendants had actual knowledge that JV football players at Damascus High School were being sexually assaulted and/or raped by sophomore members of the JV football team. Defendants failed to institute and/or follow effective policies or practices to address this systemic problem of sexual assault and/or rape.

133. Approximately four months before the October 31, 2018 locker room rapes, in July 2018, Montgomery County Public Schools issued a memorandum to coaches and athletic directors emphasizing that "Coaches must supervise student-athletes at all times, before and after practices and contests at both home and away sites." Mem. from Jeffrey K. Sullivan, *MCPS Coach Health and Safety Expectations* (July 2018).

134. Approximately six months after the locker room rapes, in May 2019, MCPS Superintendent Jack Smith wrote a letter to the Damascus High School Community discussing the October 31, 2018 sexual assault. In that letter, the Board acknowledged that sexual assaults occurred on school property, and the sexual assaults occurred without any adult supervision:

- Between approximately 2:50 p.m. and 3:15 p.m., the boys' locker room at Damascus High School was without any direct adult supervision. This period is after the varsity football team leaves the locker room to start their practice and before the JV football team reports to the practice field.

- It is during this 25-minute period that the alleged sexual assault took place.

- The JV coaches who were typically responsible for supervision during that time were delayed in their arrival. Their delays were not adequately communicated to other coaches or staff to ensure coverage of locker room supervision.

- MCPS has guidelines and protocols regarding extracurricular supervision that indicate: "Coaches must supervise student-athletes at all times, before and after practices and contests at both home and away sites."

Jack R. Smith, Ph.D., A Message from Superintendent Jack R. Smith, Ph.D. (May 15, 2019). Superintendent Smith described the lack of protocols to ensure supervision in the locker room on October 31, 2018, was "unacceptable." As a result, he introduced several changes he believed were necessary to "ensure the safety of students," including disciplining Damascus personnel, terminating Defendant Colbert, and replacing Defendant Doody as Athletic Director. Dr. Smith indicated that these changes were in addition to "a robust formulized supervision plan for every

27

athletic team and extra-curricular club every year," a plan which had already been implemented prior to May 2019 but subsequent to October 31, 2018.

135. The October 31, 2018 rapes were foreseeable to the Defendants for several reasons. First, as indicated above, Assistant Athletic Director and Varsity Head Coach Wallich, JV Coach Colbert, and it is believed the school administration, were repeatedly advised in 2016-2017 by multiple adults and athletes that brooming was occurring in unsupervised Damascus High School locker rooms. Yet, the Defendants did nothing to protect the victims.

136. Second, the Board had actual knowledge of similar sexual assaults in Montgomery County Public School locker rooms that occurred in 2018, both prior to the sexual assaults at Damascus High School on October 31, 2018.

137. In February 2018, a minor student was sexually assaulted in a locker room at Gaithersburg High School in a manner that was consistent with what occurred at Damascus High School. MCPS personnel were notified of the sexual assault but failed to take any action, much less creating and developing a "robust formulized supervision plan." In September 2018, a minor was sexually assaulted in a locker room at Seneca Valley High School in a manner that was also consistent with what occurred at Damascus High School.

138. MCPS personnel were notified of the sexual assaults but, again, failed to take any action, much less create and implement a "robust formulized supervision plan."

139. It is believed and alleged other additional incidents locker room rape occurred prior to October 31, 2018, that also made the rapes at Damascus High School foreseeable.

140. Prior to October 31, 2018, the Defendants at Damascus High School knew that supervision was necessary in locker rooms. Indeed, Defendant Crouse conceded this fact when she testified in a deposition conducted on October 9, 2015. At the time, she was a principal at

Eastern Middle School, and she provided testimony on her training and the training of those under her on how to handle and recognize student-on-student violence. She also testified as to the need for supervision of children for the protection of other children. On these issues, Defendant Crouse testified:

> The training is more about being proactive, preventing, knowing the signs. If kids are behaving certain ways in class, what it could lead to and how to address it, as well as if we had a kid in crisis, what we do.
>
> When we talk about how to handle behavior and behavior management, we have expectations in the school about teacher managed behaviors and administrative managed behaviors. And that is something we train on in preservice and throughout the year.
>
> So the expectation is that teachers keep action to keep children safe without putting themselves in harms way. That they – on a general basis when students are moving about our building – when our bell rings, every student moves – the expectation is that the adults in the building are in the hallways to be part of that movement, supervise that movement.
>
> What we know is kids make different decisions when they see adults. So that has been an expectation at our school, and its an expectation that remains.

141. In this case, prior to October 31, 2018, the Defendants knew that children needed to be supervised by adults for the protection of other students. This supervision included locker rooms, where they knew that sexual assaults had occurred and were occurring. Defendants knew or should have known that brooming was a tradition at Damascus and that sexual assaults with a broom had been perpetrated by players on the current team.

142. The Board of Education also had actual knowledge that J.A. had previously engaged in or alleged to have engaged in sexual harassment and/or assault of other students.

143. Nevertheless, Defendants failed to provide supervision of the students under their care during sanctioned school activities, such as playing JV football, and in their facilities, such as the locker rooms at Damascus High School. Defendants' failures allowed students to carry out

the sadistic brooming ritual where the victims were violently attacked, brutally beaten, and raped with a broom.

## COUNT I
### Negligence
### (Failure to Supervise Locker Room)
### (Plaintiffs v. Defendants)

144.   Plaintiffs sue Defendants for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs of this Complaint as though set forth fully herein.

145.   Defendants Board of Education, Crouse, Colbert, Wallich, and Doody stood and stand in an *in loco parentis* relationship with its students and have a special duty to protect a student from harm. Defendants Board of Education, Crouse, Colbert, Wallich, and Doody owed Plaintiffs a duty of reasonable care to ensure that they, and/or their employees, would perform proper supervision and protect the students from harm.

146.   Defendant Colbert owed a duty of care to supervise the locker room before and after practice JV football practice each day.

147.   Defendant Wallich, both as Head Varsity Coach and Assistant Athletic Director, owed a duty of care to either personally supervise the locker room or ensure that the JV football coach or other responsible adults were supervising the locker room if he was not personally present.

148.   Defendant Crouse, as Principal of Damascus High School at the time, owed a duty of care to ensure that Montgomery County Public School protocols regarding extracurricular supervision were followed by coaching staff at Damascus High School and that protocols were in place if a coach was not present to ensure that the JV football locker room was always properly supervised.

149. Defendant Doody, as Athletic Director, owed a duty of care to either personally supervise the locker room or ensure that the JV football coach or other responsible adult was supervising the locker room if he was not personally present.

150. Defendants Board of Education, Crouse, Colbert, Wallich, and Doody breached this duty of care when they allowed the locker room to be unsupervised and without adult supervision and failed to implement appropriate protocols to ensure that the locker room was supervised by a responsible adult. The Defendants or their agents knew or should have known of abuse, sexual or otherwise, in the Damascus locker room and in MCPS locker rooms around the County, and as a result, it was reasonably foreseeable that this incident would occur absent proper supervision.

151. As a direct and proximate result of the Defendants' actions, the adult and minor Plaintiffs suffered and continue to suffer profound and permanent injuries. They consciously experienced pain and suffering, emotional harm and distress, emotional trauma, humiliation, embarrassment, loss of privacy, mental pain and suffering, fright, nervousness, indignity and insult, all to their detriment. The minor Plaintiffs were deprived of educational opportunities and equal access to education. The adult and minor Plaintiffs will require extensive psychological and psychiatric care and counseling and other treatment as a proximate result of Defendants' actions.

WHEREFORE, Plaintiffs request that the Court enter a judgment against Defendants as follows: (A) Awarding Plaintiffs monetary damages against Defendants, individually, jointly and severally, in an amount to be determined at trial, but, pursuant to Md. Rule 2-305, the amount sought exceeds $75,000; (B) Awarding Plaintiffs their costs and expenses in this litigation; and (C) Awarding Plaintiffs such other relief as the Court deems just and proper.

31

## JURY DEMAND

Plaintiffs demand a jury trial as to all claims so triable.

Respectfully submitted,

Thomas M. DeGonia II
Ethridge, Quinn, Kemp,
Rowan & Hartinger
33 Wood Lane
Rockville, Maryland 20850
Phone: (301)762-1696
Fax: (301) 762-7691
E-mail: tmd@eqlawyers.com
*Counsel for Plaintiffs*

William H. "Billy" Murphy, Jr.

Edward L. Cardona III

Malcolm P. Ruff
Murphy, Falcon & Murphy, P.A.
1 South Street, 30th Floor
Baltimore, Maryland 21202
Phone: (410) 951-8744
Fax: (410) 539-6599
E-mail: Billy.Murphy@MurphyFalcon.com
E-mail: Edward.Cardona@MurphyFalcon.com
E-mail: Malcolm.Ruff@MurphyFalcon.com
*Counsel for Plaintiffs*

2020 FEB -6  AM 8:56

FILED
CLERK OF COURT
DISTRICT OFFICE