```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF MARYLAND

 3                         SOUTHERN DIVISION

 4  JOHN DOE 1 et al.,              ) CIVIL ACTION
                                    ) NO. PJM-21-356
 5            Plaintiffs,           )
                                    )
 6  v.                              )
                                    )
 7  MONTGOMERY COUNTY BOARD OF      )
    EDUCATION et al.,               )
 8                                  )
              Defendants.           )
 9
              TRANSCRIPT OF MOTIONS HEARING PROCEEDINGS
10             BEFORE THE HONORABLE PETER J. MESSITTE
                    UNITED STATES DISTRICT JUDGE
11               WEDNESDAY, MAY 3, 2023; 2:00 P.M.
                         GREENBELT, MARYLAND
12
    APPEARANCES:
13
    FOR THE PLAINTIFFS DOE FAMILY 4:
14
              JOSEPH, GREENWALD & LAAKE, P.A.
15            BY:  TIMOTHY F. MALONEY, ESQUIRE
              BY:  ALYSE L. PRAWDE, ESQUIRE
16            6404 Ivy Lane
              Suite 400
17            Greenbelt, Maryland  20770
              (240) 553-1185
18
    FOR THE PLAINTIFFS DOE FAMILIES 1 AND 2:
19
              MURPHY, FALCON & MURPHY, P.A.
20            BY:  MALCOLM P. RUFF, ESQUIRE
              BY:  WILLIAM H. MURPHY, JR., ESQUIRE
21            One South Street
              30th Floor
22            Baltimore, Maryland  21202
              (410) 951-8744
23
    OFFICIAL COURT REPORTER:
24  Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227

25        ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
```

```
 1 │ APPEARANCES (Continued):
   │
 2 │ FOR THE PLAINTIFFS DOE FAMILY 3:
   │
 3 │           ETHERIDGE, QUINN, KEMP, ROWAN & HARTINGER
   │           BY:  THOMAS M. DeGONIA, II, ESQUIRE
 4 │           33 Wood Lane
   │           Rockville, Maryland  20850
 5 │           (301) 762-1696
   │                -and-
 6 │           LAW OFFICE OF JERRY W. HYATT
   │           BY:  JERRY W. HYATT, ESQUIRE
 7 │           27 Wood Lane
   │           Rockville, Maryland  20850
 8 │           (301) 272-9955
   │
 9 │ FOR THE DEFENDANT MONTGOMERY COUNTY BOARD OF EDUCATION, CASEY
   │ CROUSE, VINCENT COLBERT, ERIC WALLICH, JEFFREY SULLIVAN:
10 │
   │           MONTGOMERY COUNTY OFFICE OF THE COUNTY ATTORNEY
11 │           BY:  JACQUELYN ALLEN, ESQUIRE
   │           BY:  MARGARET E. TURLINGTON, ESQUIRE
12 │           BY:  PATRICIA L. KANE, ESQUIRE
   │           101 Monroe Street
13 │           3rd Floor
   │           Rockville, Maryland  20850
14 │           (240) 777-6746
   │
15 │ FOR THE DEFENDANT JOSEPH DOODY:
   │
16 │           KARPINSKI, CORNBROOKS & KARP, P.A.
   │           BY:  KEVIN B. KARPINSKI, ESQUIRE
17 │           120 East Baltimore Street
   │           Suite 1850
18 │           Baltimore, Maryland  21202
   │           (410) 727-5000
19 │
20 │
21 │
22 │
23 │
24 │
25 │
```

```
 1              (Call to order of the court.)

 2              THE COURT:  Good afternoon, ladies and gentlemen.

 3    Have your seats, please.

 4              (Counsel reply, "Good afternoon, Your Honor.")

 5              THE DEPUTY CLERK:  The matter now pending before the

 6    Court is Civil Action No. PJM-21-356, Doe 1 et al. v.

 7    Montgomery County Board of Education et al.  The matter now

 8    comes before the Court for a continued motions hearing.

 9              THE COURT:  All right.  Counsel, identify yourselves

10    first for Plaintiffs and then for Defendants.

11              MR. MALONEY:  Good afternoon, Your Honor.  Timothy

12    Maloney and Alyse Prawde in the gallery on behalf of John Doe

13    No. 4.

14              MR. RUFF:  Good afternoon, Your Honor.  Malcolm Ruff

15    on behalf of John Doe Plaintiffs 1 and 2.

16              THE COURT:  I'm sorry.  Malcolm Ruff?

17              MR. RUFF:  Yes, Your Honor.

18              THE COURT:  Oh, I'm sorry.  Mr. Murphy, you are an

19    additional person so I lost the sequence here.  Go ahead,

20    Mr. Ruff.

21              MR. RUFF:  Thank you, Your Honor.  Malcolm Ruff on

22    behalf of Doe Plaintiffs 1 and 2.

23              MR. MURPHY:  And William H. Murphy, Jr. on behalf of

24    Doe Plaintiffs 1 and 2.

25              MR. DeGONIA:  Good afternoon, Your Honor.  Tom
```

1   DeGonia and Jerry Hyatt in the gallery on behalf of Doe No. 3.

2          THE COURT:  And for the Defendants?

3          MS. KANE:  Good afternoon, Your Honor.  Patty Kane

4   and Jackie Allen at counsel table, with Meg Turlington in the

5   gallery, on behalf of the Defendants Board of Education,

6   Jeffrey Sullivan, Casey Crouse, Eric Wallich, and Vinny

7   Colbert.

8          MR. KARPINSKI:  Good afternoon, Your Honor.  Kevin

9   Karpinski on behalf of Defendant Joseph Doody.

10          THE COURT:  Thank you, folks.

11      We are here today for me to render an oral opinion in

12   this case with respect to various motions for summary judgment

13   that have been filed.  I am going to do something a little

14   unusual today, though, and it is the following, maybe taking a

15   page from the Supreme Court, more or less.  I am going to

16   deliver an oral opinion, but as I prepared my notes with my law

17   clerk over the last several days, I have come very close to a

18   final written opinion, but it isn't quite what I want it to be.

19      What I do in many of these cases is give an oral opinion

20   in a case and then indicate what my board rule will be in the

21   case, and then I will say in the order, For the reasons stated

22   in the record, the Court orders as follows, and then the

23   official record is what the court reporter writes as to what I

24   say.  And that will be the case here today.

25      I will say certain things, and whatever she types out is

1  going to be the official memorandum opinion in the case, and I

2  will indicate orally what the order will be and also that it

3  will be filed today or tomorrow with a written order which

4  effectively says, For the reasons stated on the record, the

5  Court orders thus and so.

6       Now, this is a somewhat different thing which I am

7  proposing to do.  I got pretty far with my law clerk on this

8  opinion, but it's not quite what I want it to be officially.

9  On the other hand, it's not much less than what would be

10  transcribed by the court reporter today.

11       This is a complicated case with a lot of variations, and

12  I thought that I would do the following:  After I have

13  delivered my oral opinion today, I am going to distribute

14  copies of my notes because I think it will give you a much

15  clearer idea of what's happening in this case.  That is not the

16  official opinion in the case, but you will find, if you order

17  the transcript, and you should, that there is going to be a

18  very close connection between the two.  Any inconsistency, it's

19  the way in which the court reporter transcribes it which is the

20  official record.

21       I don't know that I have done this before, but I don't

22  think there is any law against it, and it seems to me that it

23  will -- rather than having you try to follow everything that I

24  have said in a rather extensive case, this scorecard may help

25  you a bit in understanding where we are going.

1    So that's the background.  I am not handing it out to you

2    before I give the opinion because I don't want you to be

3    reading it while I am talking, but I think if you follow it,

4    you will understand where I am going, and then we will see

5    where we come out.

6              MR. MURPHY:  Your Honor, I have a question.

7              THE COURT:  Well, I am not really going to entertain

8    any, Mr. Murphy, today.

9              MR. MURPHY:  I just wanted to know if you were going

10   to pay for the transcript?  It was a joke, Your Honor.

11             THE COURT:  Oh, okay.  Let's not joke, then, and

12   let's stay in order, if you will.  I am not inviting comments

13   from counsel today.  I don't want to be interrupted.  My ruling

14   is my ruling.  And whatever follow up you think you need, you

15   can follow, but I really ask counsel not to interrupt me when I

16   am speaking today.

17        As I said, the purpose of the hearing today is to deliver

18   an oral opinion with respect to various motions for summary

19   judgment.  And the Court heard the following motions during

20   oral argument a few days back:  They included Defendant Doody's

21   motion for summary judgment with respect to Doe Family No. 1,

22   ECF No. 222; Defendant Doody's motion for summary judgment with

23   respect to Doe Families 2, 3, and 4, ECF No. 223; and

24   Defendants Board of Education, Vincent Colbert, Casey Crouse,

25   Jeffrey Sullivan, and Eric Wallich's motion for summary

1   judgment as to John Doe, the first second amended complaint, at

2   ECF No. 227; and Defendants Board of Education, Vincent

3   Colbert, Casey Crouse, Jeffrey Sullivan, and Eric Wallich's

4   motion for summary judgment as to claims of John Does 2M, 3,

5   and 4M's claims, ECF No. 228.

6          Now, there are a few preliminary matters that I want to

7   address.  First, with respect to the Parent-Plaintiffs and

8   whether they should remain in the case now that their children

9   have -- some of the children, some of the young Plaintiffs have

10  reached the age of majority.

11         The Court faced this issue once before with respect to

12  Doe No. 1.  The Court held then that the Parent-Plaintiffs did

13  not have standing to bring claims in a representative capacity

14  on his behalf for alleged constitutional violations against --

15  that he claims occurred once he reached adulthood.  And that

16  was at ECF No. 89 at pages 12 and 13.

17         The Court also held in that opinion that the

18  Parent-Plaintiffs did not have standing to pursue their own

19  claims for out-of-pocket expenses once their children reached

20  adulthood, but that, presumably, they could be pursued by the

21  adult children themselves.

22         But during oral argument recently on the motions for

23  summary judgments, Plaintiffs appeared amenable to dismissing

24  the remaining parents so long as Defendants would stipulate

25  that the now adult Does would be able to recover for any

1  pre-majority claims, and Defendants conceded they would be

2  agreeable to this.

3       And although the Court is inclined to dismiss all the

4  claims brought by the Parent-Plaintiffs at this time, Jane Doe

5  2, John Doe 4, and Jane Doe 4, for now, the Court is going to

6  hold off doing so.  It's not really critical to deciding that

7  matter, and we will just leave it in place.  The outcome, I

8  think, will not be different.

9       There are certain counts that are not before the Court on

10  summary judgment, which is to say they will move forward

11  irrespective of how the Court rules today.

12       Count One, negligence claims of Does 2 through 4 as to

13  all Defendants, have not been challenged on summary judgment.

14  They remain in the case whatever the Court might say.

15       Count Two, gross negligence, claims of Does 2 through 4

16  as to Defendant Sullivan, likewise remain in the case and have

17  not been challenged.

18       Count Three, gross negligence, claims of Does 2 through 4

19  as to Defendant Crouse, at this point, the Court has no

20  challenge to that claim.

21       As to Count Five, gross negligence, claims of Does 2

22  through 4 as to Defendant Wallich, also remain in the case.

23       And as to Count Six, gross negligence, claims of Does 2

24  through 4 as to Defendant Colbert, remain in the case.

25       There are certain other aspects of Defendants' various

1   motions for summary judgment that are unopposed by the

2   Plaintiffs, and, accordingly, summary judgment will be entered

3   as to those claims.

4        As to Count Eight, the 1983 claim against Defendant

5   Sullivan, the summary judgment claim is granted as to Defendant

6   Sullivan on Count Eight, the 1983 claim, as to Plaintiff Doe 1,

7   and with respect to Does 2 through 4, only with respect to the

8   state-created danger theory.

9        The Court will proceed to rule on the other aspect of

10  that claim when I get to the 1983 claim.

11       Count Nine is a 1983 claim against Defendant Crouse.

12  Summary judgment is granted to Defendant Crouse on Count Nine

13  as to the 1983 claim of Doe No. 1.

14       Count Ten, which is a 1983 claim against Defendant

15  Wallich, summary judgment is granted as to Defendant Wallich on

16  Count Ten, the 1983 claim, as to Does 1 through 4 with respect

17  only to the state-created danger theory at this point.

18       Again, these aspects of summary judgment are being

19  granted because they are unopposed by the Plaintiffs.

20       Now, having resolved those preliminary matters, the Court

21  proceeds with its opinion count by count.  Just so you

22  understand, this will all be converted into the particular

23  motions that are before the Court, but as you know, I have

24  proceeded count by count, and it seems to me that's the easiest

25  way to discuss what we have before us.

1          First let's look at the summary judgment standard.  The

2    Court shall grant summary judgment if the movant shows that

3    there is no genuine dispute as to any material fact and that

4    the movant is entitled to judgment as a matter of law, pursuant

5    to Federal Rule of Civil Procedure 56(a).

6          A genuine dispute is one where the evidence is such that

7    a reasonable jury could return a verdict for the non-moving

8    party.  Here, the Court cites *Dulaney* at 673 F.3d 323 at 330, a

9    Fourth Circuit case from 2012.

10         A material fact is one that might affect the outcome of

11   the lawsuit given the relevant law.  The Court here cites

12   *Erwin*, which is at 591 F.3d 313 at 320, a Fourth Circuit

13   opinion from 2010.

14         When considering a motion for summary judgment, the Court

15   views the record in the light most favorable to the non-moving

16   party and draws all reasonable inferences in his or her favor.

17   Again, pursuant to the *Dulaney* case, 673 F.3d 330.

18         We turn first, then, to Count One, negligence.

19         In the second amended complaint, all Plaintiffs have sued

20   all Defendants for negligence.  That is Count One.

21         On summary judgment, Defendants have only challenged the

22   negligence claim of Doe 1 against them.  Defendants do not

23   challenge the negligence claims of Does 2 to 4.

24         The elements of negligence are, first, that the Defendant

25   owed a duty to the Plaintiff; second, that the Defendant

1    breached that duty; third, that the Defendants' breach was a

2    direct and proximate cause of the Plaintiff's injury; and

3    fourth, that Plaintiff suffered some kind of harm.

4        It has been said that summary judgment is rarely

5    appropriate with respect to negligence claims.  Here citing

6    *Spaulding*, 498 F.2d 517 at 518, a Fourth Circuit case from

7    1974.

8        Defendants do not dispute that Doe No. 1 suffered harm.

9    What they argue is that, first, they did not have a duty to

10   protect him from the criminal actions of other students;

11   second, even if they did have that duty, they did not breach it

12   because their conduct was reasonable given the information they

13   had at the time; and third, if they did breach a duty, such

14   breach cannot be a proximate and actual cause of criminal

15   actions by third parties.

16       Defendants concede that, as school officials, they had a

17   duty to Doe No. 1 because, as to him, they stood *in loco*

18   *parentis*, in the shoes of the parents.  They argue that their

19   duty to Doe No. 1 was limited only to protect him against

20   foreseeable harms and that the sexual assault of Doe No. 1 by

21   other students was not foreseeable.

22       In Maryland, foreseeability is usually a jury question.

23   Here, *Goyal*, G-O-Y-A-L, at 2011 Westlaw 4380657 at page 3;

24   *Segerman vs. Jones* at 259 A.2d 794 at 806 from the Maryland

25   Court of Special Appeals.

1        The Court finds that there is a dispute of material fact

2   here as to whether Doe No. 1's injury was foreseeable to the

3   Defendants.  Plaintiffs have cited evidence that the Montgomery

4   County Public Schools had a policy in place requiring

5   supervision of student athletes at all times, as well as a

6   mandatory program of training warning against the dangers of

7   hazing particularly in locker rooms.  The Court finds that a

8   reasonable jury could conclude that it was foreseeable to

9   Defendants that their failure to supervise teenage boys in an

10  athletic locker room could lead to the physical assaults of the

11  kind that Doe No. 1 suffered.

12       As to whether Defendants breached that duty and whether

13  that breach was a cause of Doe 1's harm, these are also issues

14  that the Court finds should go to trial.  As a general

15  proposition, in Maryland, the elements of breach and causation

16  typically do go to a jury.  To this effect, *Hardesty*, 194 F.

17  Supp. 2d 447 at 450 from this district in 2002.

18       Looking at the specific facts of this case, there is a

19  dispute of material fact as to both breach and causation.

20  Plaintiffs have put forward evidence that the Defendants'

21  failure to supervise constituted a breach, and that it was both

22  a proximate cause and a cause in fact of Doe 1's assault.

23       Again, the Court does not find today that the Plaintiffs

24  have definitively proved their negligence case; only that there

25  is a sufficient factual dispute such that summary judgment is

1   inappropriate.

2        Accordingly, Defendants' motions for summary judgment as

3   to Doe No. 1's negligence claim are denied.

4        The Court turns to Count -- Counts Two through Six, which

5   are negligence claims -- gross negligence claims.  And all

6   Plaintiffs have sued a number of Defendants for gross

7   negligence.

8        In Count Two, the Plaintiffs sue Defendant Sullivan,

9   district's athletic director; Count Three, they sue Principal

10  Crouse; Count Four, they sue Damascus High School Athletics

11  Coach Doody; Count Five, they sue Damascus High School's Head

12  Football Coach Wallich; and Count Six, they sue JV Football

13  Coach Colbert.

14       On summary judgment, Defendant Sullivan, Count Two,

15  Crouse, Count Three, Wallich, Count Five, and Colbert, Count

16  Six, challenge only the gross negligence claims of Doe No. 1.

17  They do not challenge the gross negligence claims of Does 2

18  through 4.  But Defendant Doody, Count Four, challenges the

19  gross negligence claims of all Does, 1 through 4.

20       The standard for gross negligence in Maryland is whether

21  a defendant acted with wanton or reckless disregard for human

22  life, citing *Stracke*, S-T-R-A-C-K-E, at -- I don't have the

23  first part -- an A.3d case, 561 at 569.  Generally, in

24  Maryland, gross negligence goes to the jury so long as

25  reasonable minds could disagree.  To this effect, *Nero*,

1  N-E-R-O, at 890 F.3d 106 at 131, a Fourth Circuit case from

2  2018.

3       Here, too, the Court finds there is enough of a factual

4  dispute as to whether Defendants sued for gross negligence --

5  who are being sued for gross negligence acted with such wanton

6  or reckless disregard for the Plaintiffs' rights and lives that

7  they should be processed.  The Court summarizes the critical

8  factual disputes as follows:

9       As to Count Two, Plaintiffs have presented evidence that

10  Defendant Sullivan, as director of system-wide athletics,

11  admitted in his deposition he was responsible for enforcing

12  rules, including mandatory training regarding hazing required

13  for school athletic departments.  A reasonable jury could

14  conclude that Sullivan's alleged systematic failure to ensure

15  that athletic coaches took their training and appropriately

16  supervised the students as required, whether that amounts to

17  wanton or reckless disregard as to Doe No. 1.

18       As to Count Three, Plaintiffs have presented evidence

19  that Defendant Crouse admitted in her deposition that she knew

20  lack of supervision in the Damascus boys locker room could lead

21  to the kind of harm that Doe No. 1 suffered, and that her

22  allegedly repeated failure to ensure that coaches were

23  performing their supervisory duties amounted to reckless --

24  wanton or reckless disregard as to Doe No. 1.

25       With regard to Count Four, and this is the count as to

1   Defendant -- presented by Defendant Doody, the Court finds the

2   Plaintiffs have presented evidence including the following:

3   That Defendant Doody was responsible for implementing the

4   mandatory training and supervision policies at DHS being the

5   athletics director there, but that he failed to do so.

6        That Defendants Wallich and Colbert, subordinates of

7   Doody, said in their depositions that Doody never informed them

8   of their -- of the supervisory policy.

9        Next, that Defendant Doody failed to act when he received

10  complaints about lack of supervision.

11       Next, Doody had taken a training course that specifically

12  mentioned brooming as the form of attacks as a risk in an

13  unsupervised athletic locker room.

14       And further, that Defendant Doody knew that J.C.A., the

15  individual known as J.C.A., the student, posed a danger to

16  other students.

17       The Court finds that this is sufficient to create a

18  dispute of material fact as to whether Doody acted with wanton

19  or reckless disregard as to all Does.

20       As to Count Five, Defendants have presented evidence that

21  Defendant -- sorry -- Plaintiffs have presented evidence that

22  Defendant Wallich failed to supervise the JV football team for

23  years, that he admitted that he thought he did not need to

24  supervise the JV team, and that he may have failed to complete

25  a required training.  These facts could lead a reasonable jury

1   to conclude that he acted with wanton or reckless disregard as

2   to Doe No. 1's safety and security.

3   As to Count No. Six, Plaintiffs have presented evidence

4   that Defendant Colbert failed to follow the school's

5   supervision policy and may have failed to complete a required

6   training.  These facts could lead a reasonable jury to conclude

7   that he acted with wanton or reckless disregard as to Doe 1's

8   safety and security.

9   Accordingly, the motions for summary judgment of

10  Defendant Sullivan, Count Two, Defendant Crouse, Count Three,

11  Defendant Wallich, Count Five, and Defendant Colbert, Count

12  Six, as to Doe 1's gross negligence claims, are denied.  In

13  addition, Defendant Doody's motion for summary judgment as to

14  all Does' gross negligence claims, Count Four, denied.

15  The Court turns to Count Seven, the Title IX claim.

16  All Plaintiffs have sued the Board of Education for Title

17  IX violations.  This is Count Seven.  And the Board has moved

18  for summary judgment with respect to all Plaintiffs' claims.

19  The Court will address the disputes on this count in the

20  order in which counsel for the Board presented them during oral

21  argument.

22  First, the Board argues that it is not liable for

23  punitive damages under Title IX, and, indeed, the Fourth

24  Circuit has instructed that punitive damages are not available

25  under that statute as it did in *Mercer vs. Duke University* at

1    50 Federal Appendix 643, 644, from the Fourth Circuit, 2002.

2         Accordingly, the Court grants summary judgment to the

3    Board to the extent that the Plaintiffs seek punitive damages

4    on Count Seven.

5         Second, the Board argues that emotional damages are not

6    available to Plaintiffs under Title IX pursuant to a recent

7    Supreme Court decision in *Cummings vs. Premier Rehab Keller,*

8    *PLLC*, at 142 Supreme Court 1562, a 2022 decision.  In *Cummings*,

9    the Court held that damages for emotional distress are not

10   available for statutes adopted under the suspending -- the

11   spending clause.  While Title IX was not directly at issue in

12   *Cummings*, the Board suggests that that holding applies to all

13   spending clause litigation, including the present action under

14   Title IX.

15        The Board may well be correct that *Cummings* prevents

16   Plaintiffs from recovering emotional distress damages on their

17   Title IX claim, but as Mr. Maloney pointed out during oral

18   argument, the applicability of *Cummings* to Title IX claims

19   specifically appears to be a rapidly moving landscape, with

20   various district courts reaching different conclusions.

21        In light of this rapidly moving landscape, the Court

22   finds it unnecessary to decide the *Cummings* issue on summary

23   judgment.  Damages may, and often are, limited in various ways

24   after the jury renders its verdict, and the Court prefers to

25   revisit the *Cummings* question after trial, perhaps when the

1 case law about its applicability has been more fully developed.

2   But relatedly, the Court would make two points.  First, a

3 jury typically does not award emotional damages per count; they

4 just enter one number on the verdict sheet, and, obviously,

5 there will be a verdict sheet in this case.  Emotional distress

6 damages would be available both with respect to Plaintiffs'

7 negligence claims and with respect to gross negligence claims

8 against the Board.  If the Board is found liable in both

9 negligence -- or either count of negligence, as well as for

10 Title IX violations, there would not be separate emotional

11 distress numbers reached.  They would be the same.

12   Also, even if emotional damages are not available under

13 Title IX, that decision in *Cummings* says nothing about damages

14 available for the actual violation, the impact, if you will, of

15 the bodily integrity that occurs when there is a kind of

16 violation that occurred here, and that's not necessarily

17 emotional damages, so that, arguably, would be another

18 component to allow what, in effect, would be compensatory

19 damages under that count.

20   So while Plaintiffs may ultimately be barred from

21 recovering emotional damages for their -- with respect to their

22 Title IX claim, the Court has just expressed a distinction

23 between the moment of impact and emotional sequelae that might

24 also be involved.

25   Accordingly, the Board's motion for summary judgment as

1    to emotional distress damages under Title IX, Count Seven, is

2    denied without prejudice.

3         The Court turns, however, to some of the evidence with

4    respect to the Title IX claim that has been brought into

5    question.

6         The elements of a Title IX claim under -- and this Court

7    is basing this on *Jennings vs. University of North Carolina* at

8    482 F.3d 686 at 695, a Fourth Circuit decision from 2007 --

9    first, that the Plaintiff was a student in an educational

10   institution receiving federal funds; second, if the student was

11   subjected to harassment based on sex; third, that the

12   harassment was sufficiently severe or pervasive to create a

13   hostile or abusive environment in an educational program or

14   activity; and fourth, that there is a basis for imputing

15   liability to the institution.

16        At oral argument, the Board's first merits-based argument

17   addressed the fourth element, whether there was a basis for

18   imputing liability to it.  An institution can be held for --

19   liable for a Title IX violation only if an official who has

20   authority to address the alleged discrimination and to

21   institute corrective measures has actual knowledge of the

22   discrimination in the institution's programs and fails

23   adequately to respond or displays deliberate indifference to

24   discrimination.  That, again, is from *Jennings*, citing *Gebser*,

25   G-E-B-S-E-R, from the Supreme Court, 524 U.S. 274, 290.

1      The Court then first considers the element of appropriate

2  person.

3      The Board's merits arguments as to Title IX begin with

4  the proposition that only Defendant Crouse and no other school

5  official, which would include Defendants Sullivan, Doody,

6  Wallich, and Colbert, were appropriate persons, but allowing

7  that Defendant Crouse might be.

8      An appropriate person is, at a minimum, an official with

9  authority to take corrective action to end the discrimination.

10 This is the *Gebser* case just cited by the Court, 524 U.S. 274

11 at 290.

12     Defendants argue that only Crouse can be considered an

13 appropriate person because she is the only one who had

14 authority to hire, fire, or discipline a personnel responsive

15 to the discrimination.

16     The Defendants' view of appropriate person appears to

17 derive from the Fourth Circuit case of *Bayard* [sic] at 268 F.3d

18 228 at 239, Fourth Circuit, 2001.

19     But the Court finds that more recent Fourth Circuit law

20 suggests that *Baynard* -- I said *Bayard*, it's *Baynard* -- that

21 definition may be too narrow.  In the *Jennings* case, the Fourth

22 Circuit appeared to abandon its bright line rule that an

23 appropriate person is only an official who can hire, fire, and

24 discipline in favor of a more fact-intensive inquiry of the

25 official's actual authority and extent of notice of the

1  discrimination.  This would be in *Jennings*, 482 F.3d 686 at 700

2  from the Fourth Circuit, 2007.

3       At a minimum, taking *Baynard* and *Jennings* together, the

4  Court believes it demonstrates that the question of who has the

5  power to take corrective action is fact-specific and

6  inappropriate for resolution on summary judgment.

7       And that being said, the Court believes that a jury could

8  reasonably conclude, under *Jennings*, that other school

9  officials had authority to take corrective action because they

10  could, for example, remove or discipline players on the

11  football team.

12       The Court also raises an estoppel concern.  School

13  students are told -- students are told by the school to report

14  sexual harassment to school staff or the principal.  If the

15  Court were to adopt Defendants' position, that would mean that

16  students who suffered sexual harassment or abuse and relied on

17  school policy simply to report it to a teacher could be denied

18  a Title IX claim because they had not made the report to an

19  appropriate person.  This would not be a particularly

20  satisfactory result.  In any event, the Court does not accept

21  that only -- at this juncture anyway -- Defendant Crouse would

22  be an appropriate person.

23       The next concept under Title IX is actual notice.

24       The Board argues that Defendant Crouse, or anyone else

25  who might be an appropriate person, could -- they argue that

1  they did not have actual notice of the harms Plaintiffs

2  suffered.

3        The Board's chief argument on this point is that actual

4  notice for Title IX purposes requires that the appropriate

5  person have the name of the victim and/or the assailant.  The

6  Court disagrees.

7        The Fourth Circuit has previously explained that the

8  standard for actual notice is met when an appropriate official

9  is alerted to the possibility of misconduct that a reasonable

10 person would construe as prohibited by Title IX.  The Court, in

11 this regard, cites *Doe vs. Fairfax County School Board*, 1 F.4th

12 257 at 266-68 from the Fourth Circuit, 2021.

13       Davis 1 -- excuse me.  Doe 1 concedes that the Board may

14 not have had actual notice of prior brooming incidents before

15 his assault.  But that does not foreclose his Title IX claim.

16 Doe 1's counsel has cited evidence that locker room assaults

17 were a known risk to school officials prior to August 2017.

18 And by November 2017, Crouse and other officials at the school

19 had been informed of Doe 1's assault, and that their failure to

20 ask for names of the victim and perpetrator, to investigate

21 further, or take other action amounted to deliberate

22 indifference.  And all the while Doe 1 was taunted and

23 threatened by teammates and other students in a way that

24 arguably interfered with his educational opportunities.

25       As to Does 2 through 4, their proof of actual notice is

1    stronger.  To summarize, they have offered the following

2    evidence:

3          By November 2017, Plaintiff Principal Crouse -- excuse

4    me, Defendant Principal Crouse and others were aware of Doe 1's

5    assault.  In September 2018, officials were informed the

6    players were getting threatened with brooms and poked in the

7    buttocks.  Next, the Board apparently had knowledge of at least

8    one report of brooming or other sexual assaults in locker rooms

9    in other high schools prior to October 31, 2018.  Defendant

10   Crouse was informed of, or was deliberately indifferent to, so

11   the evidence might suggest, multiple reports of actions by the

12   student J.C.A., who was one of the assault perpetrators, his

13   history of posing a danger to other students.

14         The Court is satisfied that all Doe Plaintiffs have

15   raised a factual dispute as to whether any appropriate person

16   had actual notice of Title IX misconduct in this case.

17         With regard to the deprivation of educational

18   opportunities, the Board challenges that Does 1 and 2 have not

19   shown they were deprived of access to educational opportunities

20   or benefits because they did not change schools, they did not

21   -- that they continued playing football, and that they

22   graduated on time.

23         A sexual harassment or assault victim can be said to have

24   been deprived of access to educational opportunities or

25   benefits in several respects, including when the harassment

1  results in the physical exclusion of the victim from an

2  educational program or activity; when the harassment so

3  undermines and detracts from the victim's educational

4  experience as to effectively deny them equal access to an

5  institution's resources or opportunities; or three, where the

6  harassment has a concrete, negative effect on the victim's

7  ability to participate in an educational program or activity.

8  To this effect, the Court cites *Jennings*, 482 F.3d at 699.

9        Based on what the record suggests about how Does 1 and 2

10  experienced a variety of severe anxiety symptoms and suffered

11  negative effects as to their grades and social lives, the Court

12  is satisfied there is a question of material fact here as to

13  whether Does 1 and 2 have shown sufficient deprivation,

14  particularly under either the second or third theories from

15  *Jennings*.

16        As such, then, the Court rules that the Board of

17  Education's motion for summary judgment on the merits of

18  Plaintiffs' Title IX claim, Count Seven, is denied.

19        The Court turns to Counts Eight through Ten, which are

20  claims under 42, U.S.C., Section 1983.

21        All Plaintiffs have brought 1983 claims against Defendant

22  Sullivan, Count Eight, Defendant Crouse, Count Nine, and

23  Defendant Wallich, Count Ten.  They are all sued in their

24  individual capacities.

25        At the beginning of the present opinion, the Court

1   granted summary judgment to the Defendants to the extent that

2   their motions were unopposed.  That leaves the following

3   portions of summary judgment that the Court now must resolve:

4         First, as to Count Eight, Does 2 -- Does 2 through 4

5   oppose summary judgment against Sullivan on the supervisory

6   liability theory.  As to Count Nine, Does 2 through 4 oppose

7   summary judgment in favor of Defendant Crouse on both the

8   state-created danger and supervisory liability theories.  And

9   as to Count Ten, all Does, 1 through 4, oppose summary judgment

10   in favor of Defendant Wallich on the supervisory liability

11   theory.

12         Before considering the two theories under which

13   Plaintiffs sue, the Court considers a question that came up

14   during oral argument.  Counsel for Defendants suggested that

15   Plaintiffs' 1983 claims have been brought pursuant to *Monell*

16   *vs. Department of Social Services of the City of New York*, 436

17   U.S. 658, a '78 case from the Supreme Court.  A *Monell* claim is

18   one brought for monetary recovery against a local municipality

19   where officials have acted unconstitutionally pursuant to local

20   law, policy, or custom.

21         This is not a *Monell* claim.  It is a claim brought

22   against Defendants in their individual capacities for policies

23   that they either failed to implement -- that they failed to

24   follow or they failed to implement.  So the Court, therefore,

25   rejects any suggestion that this is a masqueraded *Monell* claim.

1          Let me look at the two aspects of the 1983 claims that

2     have been further discussed.  First is the state-created danger

3     theory, that is, that somehow Defendant Crouse particularly

4     created a danger that should be actionable.  It is -- this

5     claim is only as to Does 2 through 4.

6          To establish Section 1983 liability based on a

7     state-created danger theory, a plaintiff must show that the

8     state actor created or increased the risk of private danger and

9     did so through affirmative acts, not merely through inaction or

10    omission.  To this effect, *Doe vs. Rosa*, 795 F.3d 429 at 439

11    from the Fourth Circuit, 2015.

12         Here, the parties generally disagree about what Defendant

13    Crouse did in terms of her conduct.  What they dispute is

14    whether that conduct should be considered an affirmative act or

15    merely an omission.

16         For example, the parties agree that the football team was

17    not in study hall as they had been, but they do not see eye to

18    eye on whether this was a result of Crouse's omission, on the

19    one hand, that is, her failure to do anything to reimpose study

20    hall, or if Crouse took affirmative action to cancel the study

21    hall.  These are philosophical arguments which the Court really

22    can't resolve at this point.  But certainly, arguably,

23    terminating a policy and not putting it in place could be

24    considered omission, but it's also an affirmative act.  It's

25    not the kind of thing on which responsibility and

1  accountability would rest.  For present purposes, it certainly

2  would suffice as an affirmative act.

3      Likewise, there is a disagreement under this count as to

4  causation, whether Crouse's conduct, like cancelling study hall

5  or removing the interventions put in place to monitor J.C.A.,

6  the problematic student who was a perpetrator, whether that

7  created or enhanced danger to Does 2 through 4 with respect to

8  possible assaults.

9      In the Court's view, these questions cannot be decided as

10  a matter of law.  Each side has cited its own plausible facts

11  as to why their conclusions should be given credit.

12      But the Court now denies counsel's motion for summary

13  judgment, Count Eight, that is the 1983 claim, with regard to

14  the state-created danger theory advanced by Does 2 through 4.

15      The second aspect under 1983 is the supervisory liability

16  claim.  And here, Plaintiffs make the supervisory liability

17  claim for applicability of the 1983 claim.  In Count Eight,

18  Does 2 through 4 as to Defendant Sullivan; Count Nine, Does 2

19  through 4 as to Defendant Sullivan; Count Ten, all Does, 1

20  through 4, as to Defendant Wallich.

21      To recover under a theory of supervisory liability, the

22  Plaintiff must establish the following elements:

23      One, the supervisor had actual or constructive knowledge

24  that his subordinate was engaged in conduct that posed a

25  pervasive and unreasonable risk of constitutional injury to

citizens like the plaintiff; second, that the supervisor's response to that knowledge was sufficiently inadequate so as to show deliberate indifference to, or tacit authorization of, the alleged offensive practices; and third, that the affirmative causal link between the supervisor's inaction and the particular constitutional injury existed and was suffered by Plaintiff.  To this effect, the Court cites *Shaw v. Stroud*, 13 F.3d 791 at 799, a Fourth Circuit case from 1994.

Defendants Sullivan, Crouse, and Wallich raise three primary challenges on this point.  First, they posit that Sullivan and Wallich were not supervisors because they did not have subordinates.  They do concede that Crouse was a supervisor.

Second, they say that Principal Crouse and Defendants Sullivan and Wallich, to the extent the Court finds they were supervisors, had no actual or constructive notice that the manner in which a subordinate employee supervised the football players posed a pervasive or unreasonable risk of constitutional injury, and that even if it did, they did not act with deliberate indifference such that they should be held liable.

And third, the Defendants argue that this theory is not applicable because violations of the constitutional rights were perpetrated by private actors, students, who do not have a supervisor/subordinate relationship with the individual

1    Defendants.

2           The Court considers each argument in turn.

3           As to whether Defendants Sullivan and Wallich were a

4    supervisor, the Court finds that this is a question of fact

5    about which there is a material dispute.  Defendants'

6    perspective is a formal one.  They say Sullivan and Wallich

7    were not supervisors based on their job descriptions and

8    relative locations in the district hierarchy.  For their part,

9    Plaintiffs have cited evidence that Defendants Sullivan and

10   Wallich, in fact, were supervisors.

11          Sullivan admitted in his deposition he had oversight over

12   athletics and the ability and authority to discipline others,

13   particularly by certifying coaches or decertifying them,

14   preventing them from continuing to coach if they failed to take

15   mandatory training.  And, again, this is mandatory training

16   with regard to such things as hazing.

17          And that also Defendant Wallich was the head football

18   coach at Damascus and had responsibility for delegating tasks

19   to JV Coach Colbert.

20          The factual dispute over whether Defendants Sullivan and

21   Wallich can be considered supervisors is material.  It cannot

22   be decided on summary judgment.  And with that in mind, the

23   Court is not going to grant summary judgment as to that theory.

24          Defendants then argue that Defendants Sullivan, Crouse,

25   and Wallich had no actual or constructive notice that the

1  manner in which a subordinate employee was acting or failing to

2  act posed a pervasive or unreasonable risk of constitutional

3  injury to Plaintiffs, and that even if they did, their actions

4  were not deliberately indifferent such that they should be held

5  liable.

6        There are also material disputes of fact on this point

7  that the Court believes preclude summary judgment.

8        Plaintiffs have cited evidence that Defendant Crouse knew

9  of the risk that J.C.A. posed to other students but that she

10 failed to ensure that Wallich and/or Colbert were adequately

11 supervising him.  Further, Plaintiffs suggest that prior to

12 October 31, 2018, the date of the assaults, that Sullivan was

13 aware of the brooming assault on Doe No. 1 but failed to ensure

14 that adequate supervision by the Damascus coaches had been --

15 was in place, or that the coaches had completed the required

16 training as to actions in the locker rooms.

17       And further, Wallich knew or should have known, according

18 to Plaintiffs, that Colbert was not providing adequate

19 supervision in the locker room both in August 2017, as to Doe

20 No. 1, and on October -- in October 2018 as to Does 2 through

21 4.

22       Based on these facts, among others, a reasonable jury

23 could conclude that Defendants Crouse, Wallich, and/or --

24 Crouse, Sullivan, and/or Wallich had notice that subordinate

25 employees were failing to supervise and/or complete mandatory

1  training on hazing, and that their responses to this notice was

2  deliberately indifferent.

3      Finally, the argument made by Defendants Crouse,

4  Sullivan, and Wallich is that supervisory liability, that

5  theory, is not applicable to them because other students

6  committed the assaults and Defendants did not have a

7  subordinate/supervisor relationship with those students.

8      The Court believes, candidly, Defendants have

9  misunderstood and misstated the standard for supervisory

10 liability.

11     Defendants do not need to show that -- need not have

12 conducted the assault themselves in order to be liable under

13 this theory.  It is sufficient if they participated in any

14 conduct, quote, that posed a pervasive and unreasonable risk of

15 constitutional injury to citizens like the plaintiff, end

16 quote.

17     And in this case, then, the question is not whether the

18 subordinates, themselves, perpetuated the sexual acts, but

19 whether the subordinates' failure to supervise the locker room,

20 among other alleged conduct, created a pervasive or

21 unreasonable risk of constitutional injury.

22     And viewed in this light, the question of whether

23 Defendants' alleged conduct rises to the actionable level under

24 the supervisory liability theory is one for a fact finder to

25 decide.

1        Accordingly, the Court would, as to Sullivan's motion for

2   summary judgment as to Count Eight, the supervisory liability

3   theory brought by Does 2 through 4, is denied; that is,

4   Defendants' motion in that respect is denied.

5        As to Defendant Crouse's motion for summary judgment as

6   to Count Nine, again, the motion that challenges supervisory

7   liability as brought by Does 2 through 4, is denied.

8        With regard to Defendant Wallich's motion for summary

9   judgment as to Count Ten, the supervisory liability theory as

10  brought by Does 1 through 4, is denied.

11       There is the matter of qualified immunity that has been

12  raised by the Defendants.

13       Defendants Sullivan, Crouse, and Wallich also argue that

14  to the extent any of the 1983 claims against them would

15  otherwise survive, they are entitled to qualified immunity

16  because it was not clearly established either in 2017 or '18

17  that the constitutional right Plaintiffs accuse them of

18  violating existed, nor was it clearly established that their

19  conduct violated that right.

20       The doctrine of qualified immunity shields officials from

21  civil liability so long as their conduct does not violate

22  clearly established statutory or constitutional rights of which

23  a reasonable person would have known.  This according to

24  *Pearson* at 555 U.S. 223 at 231, a 2009 case from the Supreme

25  Court.

1          A clearly established right is one that is sufficiently

2     clear that every reasonable official would have understood that

3     what he or she is doing violates that right, again citing to

4     the Supreme Court, *Reichle*, R-E-I-C-H-L-E, 566 U.S. 658 at 664,

5     a 2012 case.

6          Defendants argue that the constitutional right at issue

7     in this case is more specific than the right to be free of

8     physical assault.  Instead, they zero in on the so-called right

9     to be free from deliberate indifference from school officials

10    as to student-on-student sexual harassment, a right they doubt

11    even exists today, and one they say certainly was not clearly

12    established in 2017 and '18.  Plaintiffs, of course, dispute

13    this narrowing, urging the Court to focus more broadly on the

14    right to be free from physical assault.

15         The Court believes the Defendants are splitting

16    nonexistent hairs.  Certainly, in 2017, '18, it was well

17    established that Plaintiffs had a fundamental right to bodily

18    integrity, including the right to be free from physical

19    assault.  In this sense, it's immaterial whether the assault

20    here was sexual in nature.  At its core, it was a physical

21    assault.  And the Court, in this respect, cites *Ingraham vs.*

22    *Wright* at 430 U.S. 651, 673 to 674, and *Jones vs. Wellham* from

23    the Fourth Circuit in 1997, 104 F.3d 620, 622.  It was well

24    established that school officials owed a special duty of care

25    to their students, with regard to the safety and security of

1   their students, as *in loco parentis*.  The Court is satisfied

2   that in 2017 and 2018, there is evidence that Defendants were

3   fairly on notice, that -- that they were indifferent to the

4   possibility of locker room assault, among other conduct, and

5   that it could result in constitutional violations.

6        Accordingly, the motions of Defendants Sullivan, Crouse,

7   and Wallich for summary judgment as to qualified immunity on

8   the 1983 claims are denied.

9        The Court speaks now to damages.

10       Separately Defendants Sullivan, Crouse, and Wallich argue

11  they should not be liable for punitive damages on the 1983

12  claims.

13       The standard for punitive damages under 1983 is whether a

14  defendant acted with reckless or callous indifference to the

15  federally protected rights of others.  To this effect, *Smith*

16  *vs. Wade*, 461 U.S. 30 at 56, a 1983 case from the Supreme

17  Court.

18       Again, the Court has already acknowledged in the context

19  of other counts that there is a material dispute of fact here.

20  Plaintiffs have put forward evidence that a reasonable jury

21  could conclude that reckless or callous indifference occurred

22  here, such as Defendant Sullivan's failure to ensure that

23  coaches completed mandatory hazing -- mandatory training as to

24  hazing and that they adequately supervised the locker room even

25  though he knew of multiple prior assaults at Damascus and,

1    indeed, at other high schools in his district.

2        Plaintiffs also cite Plaintiff [sic] Crouse's failure to

3    monitor adequately the actions of J.C.A. who posed a known

4    threat to other students.

5        And finally, that Wallich's failure to ensure adequate

6    supervision of the locker room also posed a risk, knowing the

7    risk that the individual J.C.A. posed.

8        Accordingly, the motions for summary judgment as to

9    Defendant -- filed by Defendants Sullivan, Crouse, and Wallich

10   as to punitive damages on the 1983 claim are denied.

11       There is, then, the matter of injunctive relief.

12       Finally, the Plaintiffs argue -- excuse me.  I am getting

13   a little confused here and my voice is dropping.  Defendants

14   argue that Plaintiffs cannot pursue injunctive relief against

15   them because they lack standing.  They, presumably, will not --

16   are not any longer in the school such as they would be -- would

17   suffer immediate injury.

18       It is true that granting injunctive relief is proper

19   where Plaintiff demonstrates that he will suffer injury in

20   fact, which is concrete and particularized, actual and

21   imminent, not conjectural or hypothetical.  To this effect, the

22   Court cites *Proctor* at 32 F. Supp. 2d 830 at 832 from this

23   district, 1998.

24       Defendants argue that Plaintiffs no longer have standing

25   because they will never again attend Damascus, and, therefore,

 1  are no longer at the risk of future harm.

 2       But this is a classic example of the exception to the

 3  general rule, where a claim for injunctive relief is capable of

 4  repetition, but evading review.  To this effect, *Sosna*,

 5  S-O-S-N-A, *vs. Iowa* at 419 U.S. 393 at 402, n.11, a 1975 case

 6  from the Supreme Court; and *County of Riverside vs. McLaughlin*

 7  at 500 U.S. 44 at 52, a 1991 case from the Supreme Court.

 8  Plaintiffs' time at Damascus would be limited to four years,

 9  but litigation on these types of claims regularly, and in this

10  case, in the Court's view, have lasted much more than that.

11       That, then, constitutes the Court's oral opinion in the

12  case, and, therefore, the Court will announce its specific

13  rulings, summarizing them, will issue a written order

14  implementing its rulings today or tomorrow.

15       The claims of Parent-Plaintiffs Jane Doe 2, John Doe 4,

16  and Jane Doe 5 are dismissed.

17       Defendant Doody's motion for summary judgment with

18  respect to Doe Family No. 1, ECF 222, denied in its entirety.

19       Defendant Doody's motion for summary judgment with

20  respect to Doe Families 2, 3, and 4, ECF 223, denied in its

21  entirety.

22       Board of Education, Vincent Colbert, Casey Crouse,

23  Jeffrey Sullivan, and Eric Wallich's motion for summary

24  judgment as to John Doe 1 in its second amended complaint is

25  granted in part and denied in part.

1        First, the motion is granted as to Doe No. 1's 1983 claim

2    in Count Eight against Defendant Sullivan; Count Nine,

3    Defendant Crouse; on the state-created danger theory only in

4    Count Ten as to Defendant Wallich -- sorry.  Let me be clear

5    about this.  Let me restate that because I am still on the

6    Defendants' multiple motion regarding the 1983 claim.

7        As to Doe 1's 1983 claim on Count Eight as to Sullivan,

8    granted.  And as to -- I must say, I am confused.  We are not

9    dismissing the entire count.  Just on these two theories.  Let

10   me go back on this because I am not transcribing this

11   correctly.

12       It's granted insofar as the unopposed claim against

13   Defendant Sullivan in Count Eight, and as to Doe 1 and Does 2

14   and 4 on the state-created danger theory only.  It is not an

15   entire ruling against that count.

16       And in Count Ten, as to Wallich, likewise, as to the

17   state-created danger theory only.

18       And to the extent that any damages are sought in a

19   punitive nature on Title IX, that part is granted.

20       The motion, then, under ECF 227, is denied without

21   prejudice with respect to Doe 1's claims for emotional distress

22   on Count Seven, Title IX; and then the motion is denied as to

23   Doe 1's claim of negligence on Count One against the Board,

24   Sullivan, Crouse, Wallich, and Colbert; Doe 1's claims of gross

25   negligence, Counts Two against Sullivan, Three against Crouse,

Five against Wallich, and Six against Colbert; as to Doe 1's
Title IX claim, Count Seven; as to Doe 1's 1983 supervisory
liability claim as to Wallich, Count Ten; and as to Doe 1's
demand for punitive damages on his gross negligence claim,
Counts Two, Three, Five, and Six, and for his 1983 claim, Count
Ten; Doe 1's demand for injunctive relief also, the motion is
denied.

As to the motion for summary judgment of Defendants
Board, Colbert, Crouse, Sullivan, and Wallich as to John Does
2M, 3, and 4M claims at ECF 228, that motion is granted in part
and denied in part.  The motion is granted with respect to the
state-created danger theory that is posed against Defendant
Sullivan in Count Eight and against Defendant Wallich in Count
Ten; also to the extent that the punitive damages are demanded
for the Title IX claim, the Court having said that punitive
damages are not recoverable under Title IX.

The motion with respect -- we are back now on the motion
to the claims for emotional distress under Count Seven.  The
Court has held that the motion is denied as to Doe 2 through
4's claims of negligence, Count One, against the Board,
Sullivan, Crouse, Wallich, and Colbert; as to Doe 2 -- excuse
me.  This was as to Doe 2 through 4.  It's -- as to the claim
of negligence, Count One, it's denied.

This is the motion against the Board, Sullivan, Crouse,
Wallich, and Colbert, Does 2 through 4's claims of gross

1  negligence against Sullivan, Count Two, Crouse, Count Three,

2  Wallich, Count Five, Colbert, Count Four, denied.

3       The motion as to Doe 2 through 4's Title IX claim, Count

4  Seven, denied.

5       The motion as to Doe 2 through 4's 1983 claims pursuant

6  to the supervisory liability theory only, Counts Eight,

7  Sullivan, Nine, Crouse, and Ten, Wallich, denied.

8       Count [sic] 2 through 4's 1983 claims pursuant to the

9  state-created danger theory, Count Nine, as to Crouse, denied.

10      Doe 2 through 4's demands for punitive damages based on

11 their gross negligence claims, Counts Two through Six, and the

12 1983 claims, Eight Through Ten, are denied.

13      And Doe 2 through 4's demand for injunctive relief,

14 denied.

15      Now, I think I got it all out there.  We will give you

16 the papers, and you can take them home tonight and read them

17 and see whether you have any serious issues, but as far as the

18 Court is concerned, it is prepared to enter an order, with

19 perhaps a little more clarity than I spoke at the end there,

20 based on the opinion that it renders now.

21      Again, just to remind, we are going to hand out to you

22 now copies of the Court's notes.  It is -- they are not

23 official.  What is official is what the Court has said to the

24 court reporter, and I did a little bit of editing as I went

25 along.  So, I don't think I substantively changed anything, but

1   this will help you I think grasp where the Court is.

2       There are -- are there any non-humorous comments anyone

3   would like to make?

4           MR. MALONEY:  Your Honor, in view of the Court's

5   rulings, from a scheduling perspective, what happens next?

6           THE COURT:  Well, how do you feel about discovery?

7   Are you done?  Are we all done on discovery?

8           MS. KANE:  No, Your Honor.

9           THE COURT:  You are saying no?

10          MS. KANE:  No, we are not.  The Defendants had

11  reserved two hours each for the Plaintiffs on their -- their

12  condition between the time when they had been deposed

13  previously and the time of trial, so theirs still need to be

14  scheduled and taken.  The Court had authorized that.

15          THE COURT:  Well, you know, this is a case where I am

16  perfectly willing to work with counsel in terms of what fits

17  your needs in the case.  So if you think there is further

18  discovery -- I mean, that's where you are, really.  You need to

19  complete your discovery.  And then we need to -- I think we

20  should book you in for a trial date soon, and that will give

21  you a bookend there to make you get things done.  I don't

22  anticipate any other motions short of perhaps some in limine

23  motions before trial, but even then, I don't know.

24      I think it should be pretty clear what the roadmap is at

25  this point.  Why don't counsel consult --

1          MR. MALONEY:  Very well.

2          THE COURT: -- see what amount of time you need, and I

3    think -- I might just sort of pose this to you now:  What kind

4    of trial time do you think you need?  Do you need three weeks

5    for this?

6          MR. MALONEY:  That's our thinking.

7          THE COURT:  Three weeks?

8          MS. KANE:  Probably four, Your Honor.

9          THE COURT:  Well, I'd probably be looking for a trial

10   in February.  We will just set aside the month of February, and

11   that will give you a bookend on that to make you sort of get

12   your act together and get things done.  But you need to submit

13   something to the Court before that and tell me where you are

14   going to end discovery, we will bookend a pretrial conference

15   probably sometime in the first part of January, and between now

16   and then, I don't anticipate that there would be much that I

17   would see you in court over.  It seems unlikely.

18         And, of course, you know, looking down the road -- I

19   mean, I will give you when we sit at our pretrial conference --

20   this is the kind of situation where I would, obviously, expect

21   a special verdict sheet, and you need to think about that in

22   the meantime, and appropriate voir dire, which I will tell you

23   I want to be joint, appropriate instructions, which I hope that

24   you can work on jointly, and when you disagree, use the same

25   number -- I will say all this in my pretrial order to you --

1   but that's where you work together and try and get the same

2   agreement as to the appropriate instructions, and then we will

3   have a pretrial conference to see where we are.

4          MR. MALONEY:  Your Honor, we will confer jointly with

5   counsel and maybe give the Court a joint status report by

6   Monday.

7          THE COURT:  Well, right.  And then I think we have to

8   book in, according to our schedule, when you can come in for --

9   indicate as well, when you get back to me, if we save the whole

10  month of February, which is I think pretty much clear for me

11  now -- you won't be here so you don't know really.

12         MS. HANNIBAL:  When we talked about it, you said we

13  were looking at January, February, and March.

14         THE COURT:  Well, January, I just booked in another

15  long trial.  I think you need to tell us --

16         MR. MALONEY:  Your Honor, one issue I raised, and it

17  may be something that can't be fixed, a number of the Plaintiff

18  students are now college students, and, of course, maybe they

19  won't be able to come.  I don't know if the Court has any

20  availability in January, or maybe not.

21         THE COURT:  For?  Sorry.  Oh, for -- I just booked in

22  a rather long trial for January where everybody is telling me

23  that it should have been done either next month or in 2025.

24         MR. MALONEY:  Well, let us confer.

25         THE COURT:  See where you are on that.

1          MS. KANE:  We need to confer with our clients as

2     well, Your Honor, as to the dates.

3          THE COURT:  Right.  And then, of course, I say, as I

4     always do in these cases, if you want to refer the matter to a

5     magistrate judge for settlement discussions, I can do that.

6          MR. MALONEY:  Thank you.  We have had mediation

7     discussions with Judge Connelly who is still involved in the

8     case.

9          THE COURT:  He is?

10         MR. MALONEY:  He is.

11         THE COURT:  Okay.  Good enough.

12     All right, folks.  Anything else?

13     Lindsay will give out as many copies as we have there.

14     Is the press here at all?  Make sure that -- make sure she has

15     a copy and then make sure that there are enough.

16     Okay.  All right, folks.

17     (The proceedings were concluded at 3:11 p.m.)

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3              I, Renee A. Ewing, an Official Court Reporter

4    for the United States District Court for the District of

5    Maryland, do hereby certify that the foregoing is a true and

6    correct transcript of the stenographically reported proceedings

7    taken on the date and time previously stated in the above

8    matter; that the testimony of witnesses and statements of the

9    parties were correctly recorded in machine shorthand by me and

10   thereafter transcribed under my supervision with computer-aided

11   transcription to the best of my ability; and that I am neither

12   of counsel nor kin to any party in said action, nor interested

13   in the outcome thereof.

14

15              Renee A  Ewing

16              _____

17              Renee A. Ewing, RPR, RMR, CRR
                Official Court Reporter
18              May 4, 2023

19

20

21

22

23

24

25

'

**'18** [3] - 32:16, 33:12, 33:16
**'78** [1] - 25:17

## 1

**1** [37] - 1:4, 1:18, 3:6, 3:15, 3:22, 3:24, 6:21, 7:12, 9:6, 9:13, 9:16, 10:22, 11:8, 11:17, 11:19, 11:20, 12:11, 13:16, 13:19, 14:17, 14:21, 14:24, 22:11, 22:13, 22:22, 23:18, 24:9, 24:13, 25:9, 27:19, 30:13, 30:20, 32:10, 36:18, 36:24, 37:13
**1's** [19] - 12:2, 12:13, 12:22, 13:3, 16:2, 16:7, 16:12, 22:16, 22:19, 23:4, 37:1, 37:7, 37:21, 37:23, 37:24, 38:1, 38:2, 38:3, 38:6
**101** [1] - 2:12
**104** [1] - 33:23
**106** [1] - 14:1
**12** [1] - 7:16
**120** [1] - 2:17
**13** [2] - 7:16, 28:7
**131** [1] - 14:1
**142** [1] - 17:8
**1562** [1] - 17:8
**1850** [1] - 2:17
**194** [1] - 12:16
**1974** [1] - 11:7
**1975** [1] - 36:5
**1983** [29] - 9:4, 9:6, 9:10, 9:11, 9:13, 9:14, 9:16, 24:20, 24:21, 25:15, 26:1, 26:6, 27:13, 27:15, 27:17, 32:14, 34:8, 34:11, 34:13, 34:16, 35:10, 37:1, 37:6, 37:7, 38:2, 38:5, 39:5, 39:8, 39:12
**1991** [1] - 36:7
**1994** [1] - 28:8
**1997** [1] - 33:23
**1998** [1] - 35:23

## 2

**2** [41] - 1:18, 3:15, 3:22, 3:24, 6:23, 8:5, 8:12, 8:15, 8:18,

8:21, 8:23, 9:7, 10:23, 13:17, 22:25, 23:18, 24:9, 24:13, 25:4, 25:6, 26:5, 27:7, 27:14, 27:18, 30:20, 32:3, 32:7, 36:15, 36:20, 37:13, 38:19, 38:21, 38:22, 38:25, 39:3, 39:5, 39:8, 39:10, 39:13
**2001** [1] - 20:18
**2002** [2] - 12:17, 17:1
**2007** [2] - 19:8, 21:2
**2009** [1] - 32:24
**2010** [1] - 10:13
**2011** [1] - 11:23
**2012** [2] - 10:9, 33:5
**2015** [1] - 26:11
**2017** [8] - 22:17, 22:18, 23:3, 30:19, 32:16, 33:12, 33:16, 34:2
**2018** [6] - 14:2, 23:5, 23:9, 30:12, 30:20, 34:2
**2021** [1] - 22:12
**2022** [1] - 17:8
**2023** [2] - 1:11, 44:17
**2025** [1] - 42:23
**20770** [1] - 1:17
**20850** [3] - 2:4, 2:7, 2:13
**21202** [2] - 1:22, 2:18
**222** [2] - 6:22, 36:18
**223** [3] - 6:23, 32:24, 36:20
**227** [2] - 7:2, 37:20
**228** [3] - 7:5, 20:18, 38:10
**231** [1] - 32:24
**239** [1] - 20:18
**240** [2] - 1:17, 2:14
**257** [1] - 22:12
**259** [1] - 11:24
**266-68** [1] - 22:12
**268** [1] - 20:17
**27** [1] - 2:7
**272-9955** [1] - 2:8
**274** [2] - 19:25, 20:10
**290** [2] - 19:25, 20:11
**2:00** [1] - 1:11
**2d** [2] - 12:17, 35:22
**2M** [2] - 7:4, 38:10

## 3

**3** [8] - 1:11, 2:2, 4:1, 6:23, 7:4, 11:23, 36:20, 38:10
**30** [1] - 34:16

**301** [3] - 1:24, 2:5, 2:8
**30th** [1] - 1:21
**31** [2] - 23:9, 30:12
**313** [1] - 10:12
**32** [1] - 35:22
**320** [1] - 10:12
**323** [1] - 10:8
**33** [1] - 2:4
**330** [2] - 10:8, 10:17
**344-3227** [1] - 1:24
**393** [1] - 36:5
**3:11** [1] - 43:17
**3rd** [1] - 2:13

## 4

**4** [34] - 1:13, 3:13, 6:23, 8:5, 8:12, 8:15, 8:18, 8:22, 8:24, 9:7, 9:16, 10:23, 13:18, 13:19, 22:25, 25:4, 25:6, 25:9, 26:5, 27:7, 27:14, 27:18, 27:19, 27:20, 30:21, 32:3, 32:7, 32:10, 36:15, 36:20, 37:14, 38:22, 44:17
**4's** [7] - 38:20, 38:25, 39:3, 39:5, 39:8, 39:10, 39:13
**400** [1] - 1:16
**402** [1] - 36:5
**410** [2] - 1:22, 2:18
**419** [1] - 36:5
**42** [1] - 24:20
**429** [1] - 26:10
**430** [1] - 33:22
**436** [1] - 25:16
**4380657** [1] - 11:23
**439** [1] - 26:10
**44** [1] - 36:7
**447** [1] - 12:17
**450** [1] - 12:17
**461** [1] - 34:16
**482** [3] - 19:8, 21:1, 24:8
**498** [1] - 11:6
**4M** [1] - 38:10
**4M's** [1] - 7:5

## 5

**5** [1] - 36:16
**50** [1] - 17:1
**500** [1] - 36:7
**517** [1] - 11:6
**518** [1] - 11:6
**52** [1] - 36:7
**524** [2] - 19:25, 20:10
**553-1185** [1] - 1:17

**555** [1] - 32:24
**56** [1] - 34:16
**56(a)** [1] - 10:5
**561** [1] - 13:23
**566** [1] - 33:4
**569** [1] - 13:23
**591** [1] - 10:12

## 6

**620** [1] - 33:23
**622** [1] - 33:23
**6404** [1] - 1:16
**643** [1] - 17:1
**644** [1] - 17:1
**651** [1] - 33:22
**658** [2] - 25:17, 33:4
**664** [1] - 33:4
**673** [3] - 10:8, 10:17, 33:22
**674** [1] - 33:22
**686** [2] - 19:8, 21:1
**695** [1] - 19:8
**699** [1] - 24:8

## 7

**700** [1] - 21:1
**727-5000** [1] - 2:18
**762-1696** [1] - 2:5
**777-6746** [1] - 2:14
**791** [1] - 28:8
**794** [1] - 11:24
**795** [1] - 26:10
**799** [1] - 28:8

## 8

**806** [1] - 11:24
**830** [1] - 35:22
**832** [1] - 35:22
**89** [1] - 7:16
**890** [1] - 14:1

## 9

**951-8744** [1] - 1:22

## A

**A.2d** [1] - 11:24
**A.3d** [1] - 13:23
**abandon** [1] - 20:22
**ability** [3] - 24:7, 29:12, 44:11
**able** [2] - 7:25, 42:19
**abuse** [1] - 21:16
**abusive** [1] - 19:13
**accept** [1] - 21:20
**access** [3] - 23:19,

23:24, 24:4
**according** [3] - 30:17, 32:23, 42:8
**accordingly** [8] - 9:2, 13:2, 16:9, 17:2, 18:25, 32:1, 34:6, 35:8
**accountability** [1] - 27:1
**accuse** [1] - 32:17
**acknowledged** [1] - 34:18
**act** [7] - 15:9, 26:14, 26:24, 27:2, 28:20, 30:2, 41:12
**acted** [7] - 13:21, 14:5, 15:18, 16:1, 16:7, 25:19, 34:14
**acting** [1] - 30:1
**action** [7] - 17:13, 20:9, 21:5, 21:9, 22:21, 26:20, 44:12
**Action** [1] - 3:6
**ACTION** [1] - 1:4
**actionable** [2] - 26:4, 31:23
**actions** [6] - 11:10, 11:15, 23:11, 30:3, 30:16, 35:3
**activity** [3] - 19:14, 24:2, 24:7
**actor** [1] - 26:8
**actors** [1] - 28:24
**acts** [2] - 26:9, 31:18
**actual** [15] - 11:14, 18:14, 19:21, 20:25, 21:23, 22:1, 22:3, 22:8, 22:14, 22:25, 23:16, 27:23, 28:16, 29:25, 35:20
**addition** [1] - 16:13
**additional** [1] - 3:19
**address** [3] - 7:7, 16:19, 19:20
**addressed** [1] - 19:17
**adequate** [3] - 30:14, 30:18, 35:5
**adequately** [4] - 19:23, 30:10, 34:24, 35:3
**admitted** [4] - 14:11, 14:19, 15:23, 29:11
**adopt** [1] - 21:15
**adopted** [1] - 17:10
**adult** [2] - 7:21, 7:25
**adulthood** [2] - 7:15, 7:20
**advanced** [1] - 27:14
**affect** [1] - 10:12
**afternoon** [7] - 3:2,

3:4, 3:11, 3:14, 3:25, 4:3, 4:8
**age** [1] - 7:10
**agree** [1] - 26:16
**agreeable** [1] - 8:2
**agreement** [1] - 42:2
**ahead** [1] - 3:19
**AIDED** [1] - 1:25
**aided** [1] - 44:10
**al** [4] - 1:4, 1:7, 3:6, 3:7
**alerted** [1] - 22:9
**alleged** [6] - 7:14, 14:14, 19:20, 28:4, 31:20, 31:23
**allegedly** [1] - 14:22
**Allen** [1] - 4:4
**ALLEN** [1] - 2:11
**allow** [1] - 18:18
**allowing** [1] - 20:6
**ALYSE** [1] - 1:15
**Alyse** [1] - 3:12
**amenable** [1] - 7:23
**amended** [3] - 7:1, 10:19, 36:24
**amount** [1] - 41:2
**amounted** [2] - 14:23, 22:21
**amounts** [1] - 14:16
**AND** [1] - 1:18
**announce** [1] - 36:12
**anticipate** [2] - 40:22, 41:16
**anxiety** [1] - 24:10
**anyway** [1] - 21:21
**Appeals** [1] - 11:25
**APPEARANCES** [2] - 1:12, 2:1
**appeared** [2] - 7:23, 20:22
**Appendix** [1] - 17:1
**applicability** [3] - 17:18, 18:1, 27:17
**applicable** [2] - 28:23, 31:5
**applies** [1] - 17:12
**appropriate** [16] - 11:5, 20:1, 20:6, 20:8, 20:13, 20:16, 20:23, 21:19, 21:22, 21:25, 22:4, 22:8, 23:15, 41:22, 41:23, 42:2
**appropriately** [1] - 14:15
**arguably** [3] - 18:17, 22:24, 26:22
**argue** [12] - 11:9, 11:18, 20:12, 21:25, 28:22, 29:24, 32:13,

33:6, 34:10, 35:12, 35:14, 35:24
**argues** [3] - 16:22, 17:5, 21:24
**argument** [10] - 6:20, 7:22, 16:21, 17:18, 19:16, 22:3, 25:14, 29:2, 31:3
**arguments** [2] - 20:3, 26:21
**aside** [1] - 41:10
**aspect** [2] - 9:9, 27:15
**aspects** [3] - 8:25, 9:18, 26:1
**assailant** [1] - 22:5
**assault** [15] - 11:20, 12:22, 22:15, 22:19, 23:5, 23:12, 23:23, 30:13, 31:12, 33:8, 33:14, 33:19, 33:21, 34:4
**assaults** [7] - 12:10, 22:16, 23:8, 27:8, 30:12, 31:6, 34:25
**athletes** [1] - 12:5
**athletic** [5] - 12:10, 13:9, 14:13, 14:15, 15:13
**athletics** [3] - 14:10, 15:5, 29:12
**Athletics** [1] - 13:10
**attacks** [1] - 15:12
**attend** [1] - 35:25
**ATTORNEY** [1] - 2:10
**August** [2] - 22:17, 30:19
**authority** [6] - 19:20, 20:9, 20:14, 20:25, 21:9, 29:12
**authorization** [1] - 28:3
**authorized** [1] - 40:14
**availability** [1] - 42:20
**available** [6] - 16:24, 17:6, 17:10, 18:6, 18:12, 18:14
**award** [1] - 18:3
**aware** [2] - 23:4, 30:13

## B

**background** [1] - 6:1
**Baltimore** [3] - 1:22, 2:17, 2:18
**barred** [1] - 18:20
**based** [8] - 19:11, 19:16, 24:9, 26:6, 29:7, 30:22, 39:10, 39:20
**basing** [1] - 19:7

**basis** [2] - 19:14, 19:17
**Bayard** [2] - 20:17, 20:20
**Baynard** [3] - 20:20, 21:3
**BEFORE** [1] - 1:10
**begin** [1] - 20:3
**beginning** [1] - 24:25
**behalf** [8] - 3:12, 3:15, 3:22, 3:23, 4:1, 4:5, 4:9, 7:14
**believes** [5] - 21:4, 21:7, 30:7, 31:8, 33:15
**benefits** [2] - 23:20, 23:25
**best** [1] - 44:11
**between** [5] - 5:18, 18:23, 28:5, 40:12, 41:9
**bit** [2] - 5:25, 39:24
**BOARD** [2] - 1:7, 2:9
**board** [1] - 4:20
**Board** [25] - 3:7, 4:5, 6:24, 7:2, 16:16, 16:17, 16:20, 16:22, 17:3, 17:5, 17:12, 17:15, 18:8, 21:24, 22:11, 22:13, 23:7, 23:18, 24:16, 36:22, 37:23, 38:9, 38:20, 38:24
**Board's** [4] - 18:25, 19:16, 20:3, 22:3
**bodily** [2] - 18:15, 33:17
**book** [2] - 40:20, 42:8
**booked** [2] - 42:14, 42:21
**bookend** [3] - 40:21, 41:11, 41:14
**boys** [2] - 12:9, 14:20
**breach** [8] - 11:1, 11:11, 11:13, 11:14, 12:13, 12:15, 12:19, 12:21
**breached** [2] - 11:1, 12:12
**bright** [1] - 20:22
**bring** [1] - 7:13
**broadly** [1] - 33:13
**brooming** [4] - 15:12, 22:14, 23:8, 30:13
**brooms** [1] - 23:6
**brought** [9] - 8:4, 19:4, 24:21, 25:15, 25:18, 25:21, 32:3, 32:7, 32:10
**buttocks** [1] - 23:7

**BY** [10] - 1:15, 1:15, 1:20, 1:20, 2:3, 2:6, 2:11, 2:11, 2:12, 2:16

## C

**callous** [2] - 34:14, 34:21
**cancel** [1] - 26:20
**cancelling** [1] - 27:4
**candidly** [1] - 31:8
**cannot** [4] - 11:14, 27:9, 29:21, 35:14
**capable** [1] - 36:3
**capacities** [2] - 24:24, 25:22
**capacity** [1] - 7:13
**care** [1] - 33:24
**Carolina** [1] - 19:7
**case** [41] - 4:12, 4:20, 4:21, 4:24, 5:1, 5:11, 5:15, 5:16, 5:24, 7:8, 8:14, 8:16, 8:22, 8:24, 10:9, 10:17, 11:6, 12:18, 12:24, 13:23, 14:1, 18:1, 18:5, 20:10, 20:17, 20:21, 23:16, 25:17, 28:8, 31:17, 32:24, 33:5, 33:7, 34:16, 36:5, 36:7, 36:10, 36:12, 40:15, 40:17, 43:8
**cases** [2] - 4:19, 43:4
**CASEY** [1] - 2:9
**Casey** [4] - 4:6, 6:24, 7:3, 36:22
**causal** [1] - 28:5
**causation** [3] - 12:15, 12:19, 27:4
**certain** [3] - 4:25, 8:9, 8:25
**certainly** [4] - 26:22, 27:1, 33:11, 33:16
**certify** [1] - 44:5
**certifying** [1] - 29:13
**challenge** [4] - 8:20, 10:23, 13:16, 13:17
**challenged** [3] - 8:13, 8:17, 10:21
**challenges** [4] - 13:18, 23:18, 28:10, 32:6
**change** [1] - 23:20
**changed** [1] - 39:25
**chief** [1] - 22:3
**children** [4] - 7:8, 7:9, 7:19, 7:21
**Circuit** [17] - 10:9,

10:12, 11:6, 14:1, 16:24, 17:1, 19:8, 20:17, 20:18, 20:19, 20:22, 21:2, 22:7, 22:12, 26:11, 28:8, 33:23
**cite** [1] - 35:2
**cited** [6] - 12:3, 20:10, 22:16, 27:10, 29:9, 30:8
**cites** [7] - 10:8, 10:11, 22:11, 24:8, 28:7, 33:21, 35:22
**citing** [4] - 11:5, 13:22, 19:24, 33:3
**citizens** [2] - 28:1, 31:15
**City** [1] - 25:16
**civil** [1] - 32:21
**Civil** [2] - 3:6, 10:5
**CIVIL** [1] - 1:4
**claim** [43] - 8:20, 9:4, 9:5, 9:6, 9:10, 9:11, 9:13, 9:14, 9:16, 10:22, 13:3, 16:15, 17:17, 18:22, 19:4, 19:6, 21:18, 22:15, 24:18, 25:17, 25:21, 25:25, 26:5, 27:13, 27:16, 27:17, 35:10, 36:3, 37:1, 37:6, 37:7, 37:12, 37:23, 38:2, 38:3, 38:4, 38:5, 38:15, 38:22, 39:3
**claims** [45] - 7:4, 7:5, 7:13, 7:15, 7:19, 8:1, 8:4, 8:12, 8:15, 8:18, 8:21, 8:23, 9:3, 10:23, 11:5, 13:5, 13:16, 13:17, 13:19, 16:12, 16:14, 16:18, 17:18, 18:7, 24:20, 24:21, 25:15, 26:1, 32:14, 34:8, 34:12, 36:9, 36:15, 37:21, 37:24, 38:10, 38:18, 38:20, 38:25, 39:5, 39:8, 39:11, 39:12
**clarity** [1] - 39:19
**classic** [1] - 36:2
**clause** [2] - 17:11, 17:13
**clear** [4] - 33:2, 37:4, 40:24, 42:10
**clearer** [1] - 5:15
**clearly** [5] - 32:16, 32:18, 32:22, 33:1, 33:11
**clerk** [2] - 4:17, 5:7

**CLERK** [1] - 3:5
**clients** [1] - 43:1
**close** [2] - 4:17, 5:18
**Coach** [4] - 13:11, 13:12, 13:13, 29:19
**coach** [2] - 29:14, 29:18
**coaches** [6] - 14:15, 14:22, 29:13, 30:14, 30:15, 34:23
**COLBERT** [1] - 2:9
**Colbert** [20] - 4:7, 6:24, 7:3, 8:24, 13:13, 13:15, 15:6, 16:4, 16:11, 20:6, 29:19, 30:10, 30:18, 36:22, 37:24, 38:1, 38:9, 38:21, 38:25, 39:2
**college** [1] - 42:18
**comments** [2] - 6:12, 40:2
**committed** [1] - 31:6
**compensatory** [1] - 18:18
**complaint** [3] - 7:1, 10:19, 36:24
**complaints** [1] - 15:10
**complete** [4] - 15:24, 16:5, 30:25, 40:19
**completed** [2] - 30:15, 34:23
**complicated** [1] - 5:11
**component** [1] - 18:18
**computer** [1] - 44:10
**COMPUTER** [1] - 1:25
**computer-aided** [1] - 44:10
**COMPUTER-AIDED** [1] - 1:25
**concede** [2] - 11:16, 28:12
**conceded** [1] - 8:1
**concedes** [1] - 22:13
**concept** [1] - 21:23
**concern** [1] - 21:12
**concerned** [1] - 39:18
**conclude** [7] - 12:8, 14:14, 16:1, 16:6, 21:8, 30:23, 34:21
**concluded** [1] - 43:17
**conclusions** [2] - 17:20, 27:11
**concrete** [2] - 24:6, 35:20
**condition** [1] - 40:12
**conduct** [11] - 11:12, 26:13, 26:14, 27:4, 27:24, 31:14, 31:20, 31:23, 32:19, 32:21,

34:4
**conducted** [1] - 31:12
**confer** [3] - 42:4, 42:24, 43:1
**conference** [3] - 41:14, 41:19, 42:3
**confused** [2] - 35:13, 37:8
**conjectural** [1] - 35:21
**connection** [1] - 5:18
**Connelly** [1] - 43:7
**considered** [4] - 20:12, 26:14, 26:24, 29:21
**considering** [2] - 10:14, 25:12
**considers** [3] - 20:1, 25:13, 29:2
**constituted** [1] - 12:21
**constitutes** [1] - 36:11
**constitutional** [12] - 7:14, 27:25, 28:6, 28:19, 28:23, 30:2, 31:15, 31:21, 32:17, 32:22, 33:6, 34:5
**constructive** [3] - 27:23, 28:16, 29:25
**construe** [1] - 22:10
**consult** [1] - 40:25
**context** [1] - 34:18
**Continued** [1] - 2:1
**continued** [2] - 3:8, 23:21
**continuing** [1] - 29:14
**converted** [1] - 9:22
**copies** [3] - 5:14, 39:22, 43:13
**copy** [1] - 43:15
**core** [1] - 33:20
**CORNBROOKS** [1] - 2:16
**correct** [2] - 17:15, 44:6
**corrective** [4] - 19:21, 20:9, 21:5, 21:9
**correctly** [2] - 37:11, 44:9
**Counsel** [1] - 3:4
**counsel** [11] - 3:9, 4:4, 6:13, 6:15, 16:20, 22:16, 25:14, 40:16, 40:25, 42:5, 44:12
**counsel's** [1] - 27:12
**Count** [74] - 8:12, 8:15, 8:18, 8:21, 8:23, 9:4, 9:6, 9:12, 9:14, 9:16, 10:18, 10:20, 13:4, 13:8, 13:9, 13:10, 13:11, 13:12, 13:14, 13:15,

13:18, 14:9, 14:18, 14:25, 15:20, 16:3, 16:10, 16:11, 16:14, 16:15, 16:17, 17:4, 19:1, 24:18, 24:22, 24:23, 25:4, 25:6, 25:9, 27:13, 27:17, 27:18, 27:19, 32:2, 32:6, 32:9, 37:2, 37:4, 37:7, 37:13, 37:16, 37:22, 37:23, 38:2, 38:3, 38:5, 38:13, 38:18, 38:20, 38:23, 39:1, 39:2, 39:3, 39:8, 39:9
**count** [13] - 9:11, 9:21, 9:24, 14:25, 16:19, 18:3, 18:9, 18:19, 27:3, 37:9, 37:15
**Counts** [6] - 13:4, 24:19, 37:25, 38:5, 39:6, 39:11
**counts** [2] - 8:9, 34:19
**COUNTY** [4] - 1:7, 2:9, 2:10
**County** [4] - 3:7, 12:4, 22:11, 36:6
**course** [5] - 15:11, 33:12, 41:18, 42:18, 43:3
**court** [6] - 3:1, 4:23, 5:10, 5:19, 39:24, 41:17
**COURT** [23] - 1:1, 1:23, 3:2, 3:9, 3:16, 3:18, 4:2, 4:10, 6:7, 6:11, 40:6, 40:9, 40:15, 41:2, 41:7, 41:9, 42:7, 42:14, 42:21, 42:25, 43:3, 43:9, 43:11
**Court** [100] - 3:6, 3:8, 4:15, 4:22, 5:5, 6:19, 7:11, 7:12, 7:17, 8:3, 8:5, 8:9, 8:11, 8:14, 8:19, 9:9, 9:20, 9:23, 10:2, 10:8, 10:11, 10:14, 11:25, 12:1, 12:7, 12:14, 12:23, 13:4, 14:3, 14:7, 15:1, 15:17, 16:15, 16:19, 17:2, 17:7, 17:8, 17:9, 17:21, 17:24, 18:2, 18:22, 19:3, 19:6, 19:25, 20:1, 20:10, 20:19, 21:4, 21:7, 21:12, 21:15, 21:20, 22:6, 22:10, 23:14, 24:8, 24:11, 24:16, 24:19,

24:25, 25:3, 25:13, 25:17, 25:24, 26:21, 27:12, 28:7, 28:15, 29:2, 29:4, 29:23, 30:7, 31:8, 32:1, 32:25, 33:4, 33:13, 33:15, 33:21, 34:1, 34:9, 34:17, 34:18, 35:22, 36:6, 36:7, 36:12, 38:15, 38:19, 39:18, 39:23, 40:1, 40:14, 41:13, 42:5, 42:19, 44:3, 44:4, 44:17
**Court's** [5] - 27:9, 36:10, 36:11, 39:22, 40:4
**courts** [1] - 17:20
**create** [2] - 15:17, 19:12
**created** [15] - 9:8, 9:17, 25:8, 26:2, 26:4, 26:7, 26:8, 27:7, 27:14, 31:20, 37:3, 37:14, 37:17, 38:12, 39:9
**credit** [1] - 27:11
**criminal** [2] - 11:10, 11:14
**critical** [2] - 8:6, 14:7
**CROUSE** [1] - 2:9
**Crouse** [46] - 4:6, 6:24, 7:3, 8:19, 9:11, 9:12, 13:10, 13:15, 14:19, 16:10, 20:4, 20:7, 20:12, 21:21, 21:24, 22:18, 23:3, 23:4, 23:10, 24:22, 25:7, 26:3, 26:13, 26:20, 28:9, 28:12, 28:14, 29:24, 30:8, 30:23, 30:24, 31:3, 32:13, 34:6, 34:10, 35:9, 36:22, 37:3, 37:24, 37:25, 38:9, 38:21, 38:24, 39:1, 39:7, 39:9
**Crouse's** [4] - 26:18, 27:4, 32:5, 35:2
**CRR** [2] - 1:24, 44:16
**Cummings** [8] - 17:7, 17:8, 17:12, 17:15, 17:18, 17:22, 17:25, 18:13
**custom** [1] - 25:20

**D**

**damages** [24] - 16:23, 16:24, 17:3, 17:5,

17:9, 17:16, 17:23, 18:3, 18:6, 18:12, 18:13, 18:17, 18:19, 18:21, 19:1, 34:9, 34:11, 34:13, 35:10, 37:18, 38:4, 38:14, 38:16, 39:10
**Damascus** [8] - 13:10, 13:11, 14:20, 29:18, 30:14, 34:25, 35:25, 36:8
**danger** [16] - 9:8, 9:17, 15:15, 23:13, 25:8, 26:2, 26:4, 26:7, 26:8, 27:7, 27:14, 37:3, 37:14, 37:17, 38:12, 39:9
**dangers** [1] - 12:6
**date** [3] - 30:12, 40:20, 44:7
**dates** [1] - 43:2
**Davis** [1] - 22:13
**days** [2] - 4:17, 6:20
**decertifying** [1] - 29:13
**decide** [2] - 17:22, 31:25
**decided** [2] - 27:9, 29:22
**deciding** [1] - 8:6
**decision** [4] - 17:7, 17:8, 18:13, 19:8
**DEFENDANT** [2] - 2:9, 2:15
**defendant** [2] - 13:21, 34:14
**Defendant** [63] - 4:9, 6:20, 6:22, 8:16, 8:19, 8:22, 8:24, 9:4, 9:5, 9:11, 9:12, 9:14, 9:15, 10:24, 10:25, 13:8, 13:14, 13:18, 14:10, 14:19, 15:1, 15:3, 15:9, 15:14, 15:21, 15:22, 16:4, 16:10, 16:11, 16:13, 20:4, 20:7, 21:21, 21:24, 23:4, 23:9, 24:21, 24:22, 24:23, 25:7, 25:10, 26:3, 26:12, 27:18, 27:19, 27:20, 29:17, 30:8, 32:5, 32:8, 34:22, 35:9, 36:17, 36:19, 37:2, 37:3, 37:4, 37:13, 38:12, 38:13
**Defendants** [52] - 1:8, 3:10, 4:2, 4:5, 6:24, 7:2, 7:24, 8:1, 8:13, 10:20, 10:21, 10:22,

11:8, 11:16, 12:3, 12:9, 12:12, 13:6, 14:4, 15:6, 15:20, 20:5, 20:12, 25:1, 25:14, 25:22, 28:9, 28:14, 28:22, 29:1, 29:3, 29:9, 29:20, 29:24, 30:23, 31:3, 31:6, 31:8, 31:11, 32:12, 32:13, 33:6, 33:15, 34:2, 34:6, 34:10, 35:9, 35:13, 35:24, 38:8, 40:10
**Defendants'** [10] - 8:25, 11:1, 12:20, 13:2, 20:16, 21:15, 29:5, 31:23, 32:4, 37:6
**definition** [1] - 20:21
**definitively** [1] - 12:24
**DeGonia** [3] - 2:3, 3:25, 4:1
**delegating** [1] - 29:18
**deliberate** [5] - 19:23, 22:21, 28:3, 28:20, 33:9
**deliberately** [3] - 23:10, 30:4, 31:2
**deliver** [2] - 4:16, 6:17
**delivered** [1] - 5:13
**demand** [3] - 38:4, 38:6, 39:13
**demanded** [1] - 38:14
**demands** [1] - 39:10
**demonstrates** [2] - 21:4, 35:19
**denied** [27] - 13:3, 16:12, 16:14, 19:2, 21:17, 24:18, 32:3, 32:4, 32:7, 32:10, 34:8, 35:10, 36:18, 36:20, 36:25, 37:20, 37:22, 38:7, 38:11, 38:19, 38:23, 39:2, 39:4, 39:7, 39:9, 39:12, 39:14
**denies** [1] - 27:12
**deny** [1] - 24:4
**Department** [1] - 25:16
**departments** [1] - 14:13
**deposed** [1] - 40:12
**deposition** [3] - 14:11, 14:19, 29:11
**depositions** [1] - 15:7
**deprivation** [2] - 23:17, 24:13
**deprived** [2] - 23:19, 23:24

**DEPUTY** [1] - 3:5
**derive** [1] - 20:17
**descriptions** [1] - 29:7
**detracts** [1] - 24:3
**developed** [1] - 18:1
**DHS** [1] - 15:4
**different** [3] - 5:6, 8:8, 17:20
**dire** [1] - 41:22
**direct** [1] - 11:2
**directly** [1] - 17:11
**director** [3] - 13:9, 14:10, 15:5
**disagree** [3] - 13:25, 26:12, 41:24
**disagreement** [1] - 27:3
**disagrees** [1] - 22:6
**discipline** [4] - 20:14, 20:24, 21:10, 29:12
**discovery** [5] - 40:6, 40:7, 40:18, 40:19, 41:14
**discrimination** [6] - 19:20, 19:22, 19:24, 20:9, 20:15, 21:1
**discuss** [1] - 9:25
**discussed** [1] - 26:2
**discussions** [2] - 43:5, 43:7
**dismiss** [1] - 8:3
**dismissed** [1] - 36:16
**dismissing** [2] - 7:23, 37:9
**displays** [1] - 19:23
**dispute** [14] - 10:3, 10:6, 11:8, 12:1, 12:19, 12:25, 14:4, 15:18, 23:15, 26:13, 29:5, 29:20, 33:12, 34:19
**disputes** [3] - 14:8, 16:19, 30:6
**disregard** [7] - 13:21, 14:6, 14:17, 14:24, 15:19, 16:1, 16:7
**distinction** [1] - 18:22
**distress** [7] - 17:9, 17:16, 18:5, 18:11, 19:1, 37:21, 38:18
**distribute** [1] - 5:13
**District** [2] - 44:4
**DISTRICT** [3] - 1:1, 1:2, 1:10
**district** [5] - 12:17, 17:20, 29:8, 35:1, 35:23
**district's** [1] - 13:9
**DIVISION** [1] - 1:3
**doctrine** [1] - 32:20

**Doe** [65] - 3:6, 3:12, 3:15, 3:22, 3:24, 4:1, 6:21, 6:23, 7:1, 7:12, 8:4, 8:5, 9:6, 9:13, 10:22, 11:8, 11:17, 11:19, 11:20, 12:2, 12:11, 12:13, 12:22, 13:3, 13:16, 14:17, 14:21, 14:24, 16:2, 16:7, 16:12, 22:11, 22:13, 22:16, 22:19, 22:22, 23:4, 23:14, 26:10, 30:13, 30:19, 36:15, 36:16, 36:18, 36:20, 36:24, 37:1, 37:7, 37:13, 37:21, 37:23, 37:24, 38:1, 38:2, 38:3, 38:6, 38:19, 38:21, 38:22, 39:3, 39:5, 39:10, 39:13
**DOE** [4] - 1:4, 1:13, 1:18, 2:2
**Does'** [1] - 16:14
**done** [6] - 5:21, 40:7, 40:21, 41:12, 42:23
**Doody** [12] - 4:9, 13:11, 13:18, 15:1, 15:3, 15:7, 15:9, 15:11, 15:14, 15:18, 20:5
**DOODY** [1] - 2:15
**Doody's** [5] - 6:20, 6:22, 16:13, 36:17, 36:19
**doubt** [1] - 33:10
**down** [1] - 41:18
**draws** [1] - 10:16
**dropping** [1] - 35:13
**Duke** [1] - 16:25
**Dulaney** [2] - 10:8, 10:17
**during** [6] - 6:19, 7:22, 16:20, 17:17, 25:14
**duties** [1] - 14:23
**duty** [9] - 10:25, 11:1, 11:9, 11:11, 11:13, 11:17, 11:19, 12:12, 33:24

## E

**easiest** [1] - 9:24
**East** [1] - 2:17
**ECF** [9] - 6:22, 6:23, 7:2, 7:5, 7:16, 36:18, 36:20, 37:20, 38:10
**editing** [1] - 39:24
**EDUCATION** [2] - 1:7, 2:9

**Education** [6] - 3:7, 4:5, 6:24, 7:2, 16:16, 36:22
**Education's** [1] - 24:17
**educational** [9] - 19:9, 19:13, 22:24, 23:17, 23:19, 23:24, 24:2, 24:3, 24:7
**effect** [10] - 12:16, 13:25, 18:18, 24:6, 24:8, 26:10, 28:7, 34:15, 35:21, 36:4
**effectively** [2] - 5:4, 24:4
**effects** [1] - 24:11
**Eight** [14] - 9:4, 9:6, 24:19, 24:22, 25:4, 27:13, 27:17, 32:2, 37:2, 37:7, 37:13, 38:13, 39:6, 39:12
**either** [5] - 18:9, 24:14, 25:23, 32:16, 42:23
**element** [2] - 19:17, 20:1
**elements** [4] - 10:24, 12:15, 19:6, 27:22
**emotional** [17] - 17:5, 17:9, 17:16, 18:3, 18:5, 18:10, 18:12, 18:17, 18:21, 18:23, 19:1, 37:21, 38:18
**employee** [2] - 28:17, 30:1
**employees** [1] - 30:25
**end** [4] - 20:9, 31:15, 39:19, 41:14
**enforcing** [1] - 14:11
**engaged** [1] - 27:24
**enhanced** [1] - 28:7
**ensure** [6] - 14:14, 14:22, 30:10, 30:13, 34:22, 35:5
**enter** [2] - 18:4, 39:18
**entered** [1] - 9:2
**entertain** [1] - 6:7
**entire** [2] - 37:9, 37:15
**entirety** [2] - 36:18, 36:21
**entitled** [2] - 10:4, 32:15
**environment** [1] - 19:13
**equal** [1] - 24:4
**ERIC** [1] - 2:9
**Eric** [4] - 4:6, 6:25, 7:3, 36:23
**Erwin** [1] - 10:12
**ESQUIRE** [10] - 1:15,

1:15, 1:20, 1:20, 2:3, 2:6, 2:11, 2:11, 2:12, 2:16
**establish** [2] - 26:6, 27:22
**established** [7] - 32:16, 32:18, 32:22, 33:1, 33:12, 33:17, 33:24
**estoppel** [1] - 21:12
**et** [4] - 1:4, 1:7, 3:6, 3:7
**ETHERIDGE** [1] - 2:3
**evading** [1] - 36:4
**event** [1] - 21:20
**evidence** [17] - 10:6, 12:3, 12:20, 14:9, 14:18, 15:2, 15:20, 15:21, 16:3, 19:3, 22:16, 23:2, 23:11, 29:9, 30:8, 34:2, 34:20
**Ewing** [4] - 1:24, 44:3, 44:15, 44:16
**example** [3] - 21:10, 26:16, 36:2
**exception** [1] - 36:2
**exclusion** [1] - 24:1
**excuse** [4] - 22:13, 23:3, 35:12, 38:21
**existed** [2] - 28:6, 32:18
**exists** [1] - 33:11
**expect** [1] - 41:20
**expenses** [1] - 7:19
**experience** [1] - 24:4
**experienced** [1] - 24:10
**explained** [1] - 22:7
**expressed** [1] - 18:22
**extensive** [1] - 5:24
**extent** [7] - 17:3, 20:25, 25:1, 28:15, 32:14, 37:18, 38:14
**eye** [2] - 26:17, 26:18

## F

**F.2d** [1] - 11:6
**F.3d** [11] - 10:8, 10:12, 10:17, 14:1, 19:8, 20:17, 21:1, 24:8, 26:10, 28:8, 33:23
**F.4th** [1] - 22:11
**faced** [1] - 7:11
**fact** [15] - 10:3, 10:10, 12:1, 12:19, 12:22, 15:18, 20:24, 21:5, 24:12, 29:4, 29:10, 30:6, 31:24, 34:19,

35:20
**fact-intensive** [1] - 20:24
**fact-specific** [1] - 21:5
**facts** [5] - 12:18, 15:25, 16:6, 27:10, 30:22
**factual** [5] - 12:25, 14:3, 14:8, 23:15, 29:20
**failed** [12] - 15:5, 15:9, 15:22, 15:24, 16:4, 16:5, 25:23, 25:24, 29:14, 30:10, 30:13
**failing** [2] - 30:1, 30:25
**fails** [1] - 19:22
**failure** [10] - 12:9, 12:21, 14:14, 14:22, 22:19, 26:19, 31:19, 34:22, 35:2, 35:5
**Fairfax** [1] - 22:11
**fairly** [1] - 34:3
**FALCON** [1] - 1:19
**Families** [2] - 6:23, 36:20
**FAMILIES** [1] - 1:18
**FAMILY** [2] - 1:13, 2:2
**Family** [2] - 6:21, 36:18
**far** [2] - 5:7, 39:17
**favor** [4] - 10:16, 20:24, 25:7, 25:10
**favorable** [1] - 10:15
**February** [4] - 41:10, 42:10, 42:13
**federal** [1] - 19:10
**Federal** [2] - 10:5, 17:1
**federally** [1] - 34:15
**few** [2] - 6:20, 7:6
**filed** [3] - 4:13, 5:3, 35:9
**final** [1] - 4:18
**finally** [3] - 31:3, 35:5, 35:12
**finder** [1] - 31:24
**fire** [2] - 20:14, 20:23
**first** [18] - 3:10, 7:1, 7:7, 10:1, 10:18, 10:24, 11:9, 13:23, 16:22, 18:2, 19:9, 19:16, 20:1, 25:4, 26:2, 28:10, 37:1, 41:15
**fits** [1] - 40:16
**Five** [8] - 8:21, 13:11, 13:15, 15:20, 16:11, 38:1, 38:5, 39:2
**fixed** [1] - 42:17

**Floor** [2] - 1:21, 2:13
**focus** [1] - 33:13
**folks** [3] - 4:10, 43:12, 43:16
**follow** [6] - 5:23, 6:3, 6:14, 6:15, 16:4, 25:24
**following** [7] - 4:14, 5:12, 6:19, 15:2, 23:1, 25:2, 27:22
**follows** [2] - 4:22, 14:8
**football** [6] - 15:22, 21:11, 23:21, 26:16, 28:17, 29:17
**Football** [2] - 13:12
**FOR** [6] - 1:2, 1:13, 1:18, 2:2, 2:9, 2:15
**foreclose** [1] - 22:15
**foregoing** [1] - 44:5
**foreseeability** [1] - 11:22
**foreseeable** [4] - 11:20, 11:21, 12:2, 12:8
**form** [1] - 15:12
**formal** [1] - 29:6
**forward** [3] - 8:10, 12:20, 34:20
**four** [2] - 36:8, 41:8
**Four** [5] - 13:10, 13:18, 14:25, 16:14, 39:2
**Fourth** [17] - 10:9, 10:12, 11:6, 14:1, 16:23, 17:1, 19:8, 20:17, 20:18, 20:19, 20:21, 21:2, 22:7, 22:12, 26:11, 28:8, 33:23
**fourth** [1] - 11:3, 19:14, 19:17
**free** [4] - 33:7, 33:9, 33:14, 33:18
**fully** [1] - 18:1
**fundamental** [1] - 33:17
**funds** [1] - 19:10
**future** [1] - 36:1

## G

**gallery** [3] - 3:12, 4:1, 4:5
**Gebser** [2] - 19:24, 20:10
**GEBSER** [1] - 19:25
**general** [2] - 12:14, 36:3
**generally** [2] - 13:23, 26:12

**gentlemen** [1] - 3:2
**genuine** [2] - 10:3, 10:6
**given** [3] - 10:11, 11:12, 27:11
**Goyal** [1] - 11:23
**GOYAL** [1] - 11:23
**grades** [1] - 24:11
**graduated** [1] - 23:22
**grant** [2] - 10:2, 29:23
**granted** [2] - 9:5, 9:12, 9:15, 9:19, 25:1, 36:25, 37:1, 37:8, 37:12, 37:19, 38:10, 38:11
**granting** [1] - 35:18
**grants** [1] - 17:2
**grasp** [1] - 40:1
**GREENBELT** [1] - 1:11
**Greenbelt** [1] - 1:17
**GREENWALD** [1] - 1:14
**gross** [20] - 8:15, 8:18, 8:21, 8:23, 13:5, 13:6, 13:16, 13:17, 13:19, 13:20, 13:24, 14:4, 14:5, 16:12, 16:14, 18:7, 37:24, 38:4, 38:25, 39:11

## H

**hairs** [1] - 33:16
**hall** [4] - 26:17, 26:20, 26:21, 27:4
**hand** [3] - 5:9, 26:19, 39:21
**handing** [1] - 6:1
**HANNIBAL** [1] - 42:12
**harassment** [9] - 19:11, 19:12, 21:14, 21:16, 23:23, 23:25, 24:2, 24:6, 33:10
**Hardesty** [1] - 12:16
**harm** [5] - 11:3, 11:8, 12:13, 14:21, 36:1
**harms** [2] - 11:20, 22:1
**HARTINGER** [1] - 2:3
**hazing** [6] - 12:7, 14:12, 29:16, 31:1, 34:23, 34:24
**head** [1] - 29:17
**Head** [1] - 13:11
**heard** [1] - 6:19
**HEARING** [1] - 1:9
**hearing** [2] - 3:8, 6:17
**held** [7] - 7:12, 7:17, 17:9, 19:18, 28:20,

30:4, 38:19
**help** [2] - 5:24, 40:1
**hereby** [1] - 44:5
**hierarchy** [1] - 29:8
**high** [2] - 23:9, 35:1
**High** [2] - 13:10, 13:11
**hire** [2] - 20:14, 20:23
**history** [1] - 23:13
**hold** [1] - 8:6
**holding** [1] - 17:12
**home** [1] - 39:16
**Honor** [16] - 3:4, 3:11, 3:14, 3:17, 3:21, 3:25, 4:3, 4:8, 6:6, 6:10, 40:4, 40:8, 41:8, 42:4, 42:16, 43:2
**HONORABLE** [1] - 1:10
**hope** [1] - 41:23
**hostile** [1] - 19:13
**hours** [1] - 40:11
**human** [1] - 13:21
**humorous** [1] - 40:2
**HYATT** [2] - 2:6, 2:6
**Hyatt** [1] - 4:1
**hypothetical** [1] - 35:21

## I

**idea** [1] - 5:15
**identify** [1] - 3:9
**II** [1] - 2:3
**immaterial** [1] - 33:19
**immediate** [1] - 35:17
**imminent** [1] - 35:21
**immunity** [4] - 32:11, 32:15, 32:20, 34:7
**impact** [2] - 18:14, 18:23
**implement** [2] - 25:23, 25:24
**implementing** [2] - 15:3, 36:14
**imputing** [2] - 19:14, 19:18
**IN** [1] - 1:1
**inaction** [2] - 26:9, 28:5
**inadequate** [1] - 28:2
**inappropriate** [2] - 13:1, 21:6
**incidents** [1] - 22:14
**inclined** [1] - 8:3
**include** [1] - 20:5
**included** [1] - 6:20
**including** [5] - 14:12, 15:2, 17:13, 23:25, 33:18

**inconsistency** [1] - 5:18
**increased** [1] - 26:8
**indeed** [2] - 16:23, 35:1
**indicate** [3] - 4:20, 5:2, 42:9
**indifference** [7] - 19:23, 22:22, 28:3, 28:20, 33:9, 34:14, 34:21
**indifferent** [4] - 23:10, 30:4, 31:2, 34:3
**individual** [5] - 15:15, 24:24, 25:22, 28:25, 35:7
**inferences** [1] - 10:16
**information** [1] - 11:12
**informed** [4] - 15:7, 22:19, 23:5, 23:10
**Ingraham** [1] - 33:21
**injunctive** [6] - 35:11, 35:14, 35:18, 36:3, 38:6, 39:13
**injury** [10] - 11:2, 12:2, 27:25, 28:6, 28:19, 30:3, 31:15, 31:21, 35:17, 35:19
**inquiry** [1] - 20:24
**insofar** [1] - 37:12
**instead** [1] - 33:8
**institute** [1] - 19:21
**institution** [3] - 19:10, 19:15, 19:18
**institution's** [2] - 19:22, 24:5
**instructed** [1] - 16:24
**instructions** [2] - 41:23, 42:2
**integrity** [2] - 18:15, 33:18
**intensive** [1] - 20:24
**interested** [1] - 44:12
**interfered** [1] - 22:24
**interrupt** [1] - 6:15
**interrupted** [1] - 6:13
**interventions** [1] - 27:5
**investigate** [1] - 22:20
**inviting** [1] - 6:12
**involved** [2] - 18:24, 43:7
**Iowa** [1] - 36:5
**irrespective** [1] - 8:11
**issue** [6] - 7:11, 17:11, 17:22, 33:6, 36:13, 42:16
**issues** [2] - 12:13, 39:17

**Ivy** [1] - 1:16
**IX** [29] - 16:15, 16:17, 16:23, 17:6, 17:11, 17:14, 17:17, 17:18, 18:10, 18:13, 18:22, 19:1, 19:4, 19:6, 19:19, 20:3, 21:18, 21:23, 22:4, 22:10, 22:15, 23:16, 24:18, 37:19, 37:22, 38:2, 38:15, 38:16, 39:3

## J

**J.C.A** [7] - 15:14, 15:15, 23:12, 27:5, 30:9, 35:3, 35:7
**Jackie** [1] - 4:4
**JACQUELYN** [1] - 2:11
**Jane** [4] - 8:4, 8:5, 36:15, 36:16
**January** [5] - 41:15, 42:13, 42:14, 42:20, 42:22
**Jeffrey** [4] - 4:6, 6:25, 7:3, 36:23
**JEFFREY** [1] - 2:9
**Jennings** [8] - 19:7, 19:24, 20:21, 21:1, 21:3, 21:8, 24:8, 24:15
**JERRY** [2] - 2:6, 2:6
**Jerry** [1] - 4:1
**job** [1] - 29:7
**JOHN** [1] - 1:4
**John** [8] - 3:12, 3:15, 7:1, 7:4, 8:5, 36:15, 36:24, 38:9
**joint** [2] - 41:23, 42:5
**jointly** [2] - 41:24, 42:4
**joke** [2] - 6:10, 6:11
**Jones** [2] - 11:24, 33:22
**JOSEPH** [2] - 1:14, 2:15
**Joseph** [1] - 4:9
**JR** [1] - 1:20
**Jr** [1] - 3:23
**judge** [1] - 43:5
**JUDGE** [1] - 1:10
**Judge** [1] - 43:7
**judgment** [49] - 4:12, 6:19, 6:21, 6:22, 7:1, 7:4, 8:10, 8:13, 9:1, 9:2, 9:5, 9:12, 9:15, 9:18, 10:1, 10:2, 10:4, 10:14, 10:21, 11:4, 12:25, 13:2, 13:14, 16:9, 16:13,

16:18, 17:2, 17:23, 18:25, 21:6, 24:17, 25:1, 25:3, 25:5, 25:7, 25:9, 27:13, 29:22, 29:23, 30:7, 32:2, 32:5, 32:9, 34:7, 35:8, 36:17, 36:19, 36:24, 38:8
**judgments** [1] - 7:23
**juncture** [1] - 21:21
**jury** [13] - 10:7, 11:22, 12:8, 12:16, 13:24, 14:13, 15:25, 16:6, 17:24, 18:3, 21:7, 30:22, 34:20
**JV** [4] - 13:12, 15:22, 15:24, 29:19

## K

**KANE** [6] - 2:12, 4:3, 40:8, 40:10, 41:8, 43:1
**Kane** [1] - 4:3
**KARP** [1] - 2:16
**Karpinski** [1] - 4:9
**KARPINSKI** [3] - 2:16, 2:16, 4:8
**Keller** [1] - 17:7
**KEMP** [1] - 2:3
**KEVIN** [1] - 2:16
**Kevin** [1] - 4:8
**kin** [1] - 44:12
**kind** [7] - 11:3, 12:11, 14:21, 18:15, 26:25, 41:3, 41:20
**knowing** [1] - 35:6
**knowledge** [4] - 19:21, 23:7, 27:23, 28:2
**known** [5] - 15:15, 22:17, 30:17, 32:23, 35:3

## L

**LAAKE** [1] - 1:14
**lack** [3] - 14:20, 15:10, 35:15
**ladies** [1] - 3:2
**landscape** [2] - 17:19, 17:21
**Lane** [3] - 1:16, 2:4, 2:7
**last** [1] - 4:17
**lasted** [1] - 36:10
**LAW** [1] - 2:6
**law** [9] - 4:16, 5:7, 5:22, 10:4, 10:11, 18:1, 20:19, 25:20,

27:10
**lawsuit** [1] - 10:11
**lead** [4] - 12:10, 14:20, 15:25, 16:6
**least** [1] - 23:7
**leave** [1] - 8:7
**leaves** [1] - 25:2
**less** [2] - 4:15, 5:9
**level** [1] - 31:23
**liability** [18] - 19:15, 19:18, 25:6, 25:8, 25:10, 26:6, 27:15, 27:16, 27:21, 31:4, 31:10, 31:24, 32:2, 32:7, 32:9, 32:21, 38:3, 39:6
**liable** [7] - 16:22, 18:8, 19:19, 28:21, 30:5, 31:12, 34:11
**life** [1] - 13:22
**light** [3] - 10:15, 17:21, 31:22
**likewise** [3] - 8:16, 27:3, 37:16
**limine** [1] - 40:22
**limited** [3] - 11:19, 17:23, 36:8
**Lindsay** [1] - 43:13
**line** [1] - 20:22
**link** [1] - 28:5
**litigation** [2] - 17:13, 36:9
**lives** [2] - 14:6, 24:11
**local** [2] - 25:18, 25:19
**locations** [1] - 29:8
**locker** [12] - 12:7, 12:10, 14:20, 15:13, 22:16, 23:8, 30:16, 30:19, 31:19, 34:4, 34:24, 35:6
**loco** [2] - 11:17, 34:1
**look** [2] - 10:1, 26:1
**looking** [4] - 12:18, 41:9, 41:18, 42:13
**lost** [1] - 3:19

## M

**machine** [1] - 44:9
**magistrate** [1] - 43:5
**majority** [2] - 7:10, 8:1
**MALCOLM** [1] - 1:20
**Malcolm** [3] - 3:14, 3:16, 3:21
**MALONEY** [10] - 1:15, 3:11, 40:4, 41:1, 41:6, 42:4, 42:16, 42:24, 43:6, 43:10
**Maloney** [2] - 3:12, 17:17

**mandatory** [8] - 12:6, 14:12, 15:4, 29:15, 30:25, 34:23
**manner** [2] - 28:17, 30:1
**March** [1] - 42:13
**MARGARET** [1] - 2:11
**MARYLAND** [2] - 1:2, 1:11
**Maryland** [12] - 1:17, 1:22, 2:4, 2:7, 2:13, 2:18, 11:22, 11:24, 12:15, 13:20, 13:24, 44:5
**masqueraded** [1] - 25:25
**material** [10] - 10:3, 10:10, 12:1, 12:19, 15:18, 24:12, 29:5, 29:21, 30:6, 34:19
**matter** [9] - 3:5, 3:7, 8:7, 10:4, 27:10, 32:11, 35:11, 43:4, 44:8
**matters** [2] - 7:6, 9:20
**MAY** [1] - 1:11
**McLaughlin** [1] - 36:6
**mean** [3] - 21:15, 40:18, 41:19
**meantime** [1] - 41:22
**measures** [1] - 19:21
**mediation** [1] - 43:6
**Meg** [1] - 4:4
**memorandum** [1] - 5:1
**mentioned** [1] - 15:12
**Mercer** [1] - 16:25
**merely** [2] - 26:9, 26:15
**merits** [3] - 19:16, 20:3, 24:17
**merits-based** [1] - 19:16
**MESSITTE** [1] - 1:10
**met** [1] - 22:8
**might** [7] - 8:14, 10:10, 18:23, 20:7, 21:25, 23:11, 41:3
**mind** [1] - 29:22
**minds** [1] - 13:25
**minimum** [2] - 20:8, 21:3
**misconduct** [2] - 22:9, 23:16
**misstated** [1] - 31:9
**misunderstood** [1] - 31:9
**moment** [1] - 18:23
**Monday** [1] - 42:6
**Monell** [4] - 25:15,

25:17, 25:21, 25:25
**monetary** [1] - 25:18
**monitor** [2] - 27:5, 35:3
**Monroe** [1] - 2:12
**MONTGOMERY** [3] - 1:7, 2:9, 2:10
**Montgomery** [3] - 3:7, 12:3
**month** [3] - 41:10, 42:10, 42:23
**most** [1] - 10:15
**motion** [31] - 6:21, 6:22, 6:25, 7:4, 10:14, 16:13, 18:25, 24:17, 27:12, 32:1, 32:4, 32:5, 32:6, 32:8, 36:17, 36:19, 36:23, 37:1, 37:6, 37:20, 37:22, 38:6, 38:8, 38:10, 38:11, 38:17, 38:19, 38:24, 39:3, 39:5
**motions** [14] - 3:8, 4:12, 6:18, 6:19, 7:22, 9:1, 9:23, 13:2, 16:9, 25:2, 34:6, 35:8, 40:22, 40:23
**MOTIONS** [1] - 1:9
**movant** [2] - 10:2, 10:4
**move** [1] - 8:10
**moved** [1] - 16:17
**moving** [4] - 10:7, 10:15, 17:19, 17:21
**MR** [17] - 3:11, 3:14, 3:17, 3:21, 3:23, 3:25, 4:8, 6:6, 6:9, 40:4, 41:1, 41:6, 42:4, 42:16, 42:24, 43:6, 43:10
**MS** [6] - 4:3, 40:8, 40:10, 41:8, 42:12, 43:1
**multiple** [3] - 23:11, 34:25, 37:6
**municipality** [1] - 25:18
**Murphy** [3] - 3:18, 3:23, 6:8
**MURPHY** [6] - 1:19, 1:20, 3:23, 6:6, 6:9
**must** [4] - 25:3, 26:7, 27:22, 37:8

## N

**n.11** [1] - 36:5
**name** [1] - 22:5
**names** [1] - 22:20

**narrow** [1] - 20:21
**narrowing** [1] - 33:13
**nature** [2] - 33:20, 37:19
**necessarily** [1] - 18:16
**need** [14] - 6:14, 15:23, 31:11, 40:13, 40:18, 40:19, 41:2, 41:4, 41:12, 41:21, 42:15, 43:1
**needs** [1] - 40:17
**negative** [2] - 24:6, 24:11
**negligence** [36] - 8:12, 8:15, 8:18, 8:21, 8:23, 10:18, 10:20, 10:22, 10:23, 10:24, 11:5, 12:24, 13:3, 13:5, 13:7, 13:16, 13:17, 13:19, 13:20, 13:24, 14:4, 14:5, 16:12, 16:14, 18:7, 18:9, 37:23, 37:25, 38:4, 38:20, 38:23, 39:1, 39:11
**Nero** [1] - 13:25
**NERO** [1] - 14:1
**never** [2] - 15:7, 35:25
**New** [1] - 25:16
**next** [6] - 15:9, 15:11, 21:23, 23:7, 40:5, 42:23
**Nine** [9] - 9:11, 9:12, 24:22, 25:6, 27:18, 32:6, 37:2, 39:7, 39:9
**NO** [1] - 1:4
**non** [3] - 10:7, 10:15, 40:2
**non-humorous** [1] - 40:2
**non-moving** [2] - 10:7, 10:15
**nonexistent** [1] - 33:16
**North** [1] - 19:7
**notes** [3] - 4:16, 5:14, 39:22
**NOTES** [1] - 1:25
**nothing** [1] - 18:13
**notice** [13] - 20:25, 21:23, 22:1, 22:4, 22:8, 22:14, 22:25, 23:16, 28:16, 29:25, 30:24, 31:1, 34:3
**November** [2] - 22:18, 23:3
**number** [4] - 13:6, 18:4, 41:25, 42:17
**numbers** [1] - 18:11

## O

**obviously** [2] - 18:4, 41:20
**occurred** [3] - 7:15, 18:16, 34:21
**occurs** [1] - 18:15
**October** [4] - 23:9, 30:12, 30:20
**OF** [7] - 1:2, 1:7, 1:9, 1:25, 2:6, 2:9, 2:10
**offensive** [1] - 28:4
**offered** [1] - 23:1
**OFFICE** [2] - 2:6, 2:10
**Official** [1] - 44:3
**official** [3] - 4:23, 5:1, 5:16, 5:20, 19:19, 20:5, 20:8, 20:23, 22:8, 33:2, 39:23, 44:17
**OFFICIAL** [1] - 1:23
**official's** [1] - 20:25
**officially** [1] - 5:8
**officials** [9] - 11:16, 21:9, 22:17, 22:18, 23:5, 25:19, 32:20, 33:9, 33:24
**often** [1] - 17:23
**omission** [4] - 26:10, 26:15, 26:18, 26:24
**once** [3] - 7:11, 7:15, 7:19
**one** [14] - 10:6, 10:10, 18:4, 20:13, 23:8, 23:12, 25:18, 26:19, 27:23, 29:6, 31:24, 33:1, 33:11, 42:16
**One** [7] - 1:21, 8:12, 10:18, 10:20, 37:23, 38:20, 38:23
**opinion** [16] - 4:11, 4:16, 4:18, 4:19, 5:1, 5:8, 5:13, 5:16, 6:2, 6:18, 7:17, 9:21, 10:13, 24:25, 36:11, 39:20
**opportunities** [5] - 22:24, 23:18, 23:19, 23:24, 24:5
**oppose** [3] - 25:5, 25:6, 25:9
**oral** [12] - 4:11, 4:16, 4:19, 5:13, 6:18, 6:20, 7:22, 16:20, 17:17, 19:16, 25:14, 36:11
**orally** [1] - 5:2
**order** [11] - 3:1, 4:21, 5:2, 5:3, 5:16, 6:12, 16:20, 31:12, 36:13,

39:18, 41:25
**orders** [2] - 4:22, 5:5
**otherwise** [1] - 32:15
**out-of-pocket** [1] - 7:19
**outcome** [3] - 8:7, 10:10, 44:13
**oversight** [1] - 29:11
**owed** [2] - 10:25, 33:24
**own** [2] - 7:18, 27:10

## P

**P.A** [3] - 1:14, 1:19, 2:16
**p.m** [1] - 43:17
**P.M** [1] - 1:11
**page** [2] - 4:15, 11:23
**pages** [1] - 7:16
**papers** [1] - 39:16
**Parent** [5] - 7:7, 7:12, 7:18, 8:4, 36:15
**Parent-Plaintiffs** [5] - 7:7, 7:12, 7:18, 8:4, 36:15
**parentis** [2] - 11:18, 34:1
**parents** [2] - 7:24, 11:18
**part** [8] - 13:23, 29:8, 36:25, 37:19, 38:10, 38:11, 41:15
**participate** [1] - 24:7
**participated** [1] - 31:13
**particular** [2] - 9:22, 28:6
**particularized** [1] - 35:20
**particularly** [5] - 12:7, 21:19, 24:14, 26:3, 29:13
**parties** [4] - 11:15, 26:12, 26:16, 44:9
**party** [3] - 10:8, 10:16, 44:12
**PATRICIA** [1] - 2:12
**Patty** [1] - 4:3
**pay** [1] - 6:10
**Pearson** [1] - 32:24
**pending** [1] - 3:5
**per** [1] - 18:3
**perfectly** [1] - 40:16
**performing** [1] - 14:23
**perhaps** [3] - 17:25, 39:19, 40:22
**perpetrated** [1] - 28:24
**perpetrator** [2] -

22:20, 27:6
**perpetrators** [1] - 23:12
**perpetuated** [1] - 31:18
**person** [13] - 3:19, 20:2, 20:8, 20:13, 20:16, 20:23, 21:19, 21:22, 21:25, 22:5, 22:10, 23:15, 32:23
**personnel** [1] - 20:14
**persons** [1] - 20:6
**perspective** [2] - 29:6, 40:5
**pervasive** [6] - 19:12, 27:25, 28:18, 30:2, 31:14, 31:20
**PETER** [1] - 1:10
**philosophical** [1] - 26:21
**physical** [6] - 12:10, 24:1, 33:8, 33:14, 33:18, 33:20
**PJM-21-356** [2] - 1:4, 3:6
**place** [5] - 8:7, 12:4, 26:23, 27:5, 30:15
**plaintiff** [3] - 26:7, 28:1, 31:15
**Plaintiff** [10] - 9:6, 10:25, 11:3, 19:9, 23:3, 27:22, 28:7, 35:2, 35:19, 42:17
**Plaintiff's** [1] - 11:2
**plaintiffs** [2] - 12:3, 12:20
**Plaintiffs** [47] - 1:5, 3:10, 3:15, 3:22, 3:24, 7:7, 7:9, 7:12, 7:18, 7:23, 8:4, 9:2, 9:19, 10:19, 12:23, 13:6, 13:8, 14:9, 14:18, 15:2, 15:21, 16:3, 16:16, 17:3, 17:6, 17:16, 18:20, 22:1, 23:14, 24:21, 25:13, 27:16, 29:9, 30:3, 30:8, 30:11, 30:18, 32:17, 33:12, 33:17, 34:20, 35:2, 35:12, 35:14, 35:24, 36:15, 40:11
**PLAINTIFFS** [3] - 1:13, 1:18, 2:2
**Plaintiffs'** [6] - 14:6, 16:18, 18:6, 24:18, 25:15, 36:8
**plausible** [1] - 27:10
**players** [3] - 21:10, 23:6, 28:18

**playing** [1] - 23:21
**PLLC** [1] - 17:8
**pocket** [1] - 7:19
**point** [7] - 8:19, 9:17, 22:3, 26:22, 28:10, 30:6, 40:25
**pointed** [1] - 17:17
**points** [1] - 18:2
**poked** [1] - 23:6
**policies** [2] - 15:4, 25:22
**policy** [6] - 12:4, 15:8, 16:5, 21:17, 25:20, 26:23
**portions** [1] - 25:3
**pose** [1] - 41:3
**posed** [10] - 15:15, 27:24, 28:18, 30:2, 30:9, 31:14, 35:3, 35:6, 35:7, 38:12
**posing** [1] - 23:13
**posit** [1] - 28:10
**position** [1] - 21:15
**possibility** [2] - 22:9, 34:4
**possible** [1] - 27:8
**power** [1] - 21:5
**practices** [1] - 28:4
**PRAWDE** [1] - 1:15
**Prawde** [1] - 3:12
**pre** [1] - 8:1
**pre-majority** [1] - 8:1
**preclude** [1] - 30:7
**prefers** [1] - 17:24
**prejudice** [2] - 19:2, 37:21
**preliminary** [2] - 7:6, 9:20
**premier** [1] - 17:7
**prepared** [2] - 4:16, 39:18
**present** [3] - 17:13, 24:25, 27:1
**presented** [8] - 14:9, 14:18, 15:1, 15:2, 15:20, 15:21, 16:3, 16:20
**press** [1] - 43:14
**presumably** [2] - 7:20, 35:15
**pretrial** [4] - 41:14, 41:19, 41:25, 42:3
**pretty** [3] - 5:7, 40:24, 42:10
**preventing** [1] - 29:14
**prevents** [1] - 17:15
**previously** [3] - 22:7, 40:13, 44:7
**primary** [1] - 28:10
**Principal** [4] - 13:9,

23:3, 23:4, 28:14
**principal** [1] - 21:14
**private** [2] - 26:8, 28:24
**problematic** [1] - 27:6
**Procedure** [1] - 10:5
**proceed** [1] - 9:9
**proceeded** [1] - 9:24
**PROCEEDINGS** [1] - 1:9
**proceedings** [2] - 43:17, 44:6
**proceeds** [1] - 9:21
**processed** [1] - 14:7
**Proctor** [1] - 35:22
**program** [4] - 12:6, 19:13, 24:2, 24:7
**programs** [1] - 19:22
**prohibited** [1] - 22:10
**proof** [1] - 22:25
**proper** [1] - 35:18
**proposing** [1] - 5:7
**proposition** [2] - 12:15, 20:4
**protect** [2] - 11:10, 11:19
**protected** [1] - 34:15
**proved** [1] - 12:24
**providing** [1] - 30:18
**proximate** [3] - 11:2, 11:14, 12:22
**Public** [1] - 12:4
**punitive** [11] - 16:23, 16:24, 17:3, 34:11, 34:13, 35:10, 37:19, 38:4, 38:14, 38:15, 39:10
**purpose** [1] - 6:17
**purposes** [2] - 22:4, 27:1
**pursuant** [7] - 10:4, 10:17, 17:6, 25:15, 25:19, 39:5, 39:8
**pursue** [2] - 7:18, 35:14
**pursued** [1] - 7:20
**put** [3] - 12:20, 27:5, 34:20
**putting** [1] - 26:23

## Q

**qualified** [4] - 32:11, 32:15, 32:20, 34:7
**questions** [1] - 27:9
**QUINN** [1] - 2:3
**quite** [2] - 4:18, 5:8
**quote** [2] - 31:14, 31:16

## R

**raise** [1] - 28:9
**raised** [3] - 23:15, 32:12, 42:16
**raises** [1] - 21:12
**rapidly** [2] - 17:19, 17:21
**rarely** [1] - 11:4
**rather** [3] - 5:23, 5:24, 42:22
**reached** [4] - 7:10, 7:15, 7:19, 18:11
**reaching** [1] - 17:20
**read** [1] - 39:16
**reading** [1] - 6:3
**really** [6] - 6:7, 6:15, 8:6, 26:21, 40:18, 42:11
**reasonable** [13] - 10:7, 10:16, 11:12, 12:8, 13:25, 14:13, 15:25, 16:6, 22:9, 30:22, 32:23, 33:2, 34:20
**reasonably** [1] - 21:8
**reasons** [2] - 4:21, 5:4
**received** [1] - 15:9
**receiving** [1] - 19:10
**recent** [2] - 17:6, 20:19
**recently** [1] - 7:22
**reckless** [10] - 13:21, 14:6, 14:17, 14:23, 14:24, 15:19, 16:1, 16:7, 34:14, 34:21
**record** [6] - 4:22, 4:23, 5:4, 5:20, 10:15, 24:9
**recorded** [1] - 44:9
**recover** [2] - 7:25, 27:21
**recoverable** [1] - 38:16
**recovering** [2] - 17:16, 18:21
**recovery** [1] - 25:18
**refer** [1] - 43:4
**regard** [7] - 14:25, 22:11, 23:17, 27:13, 29:16, 32:8, 33:25
**regarding** [2] - 14:12, 37:6
**regularly** [1] - 36:9
**Rehab** [1] - 17:7
**Reichle** [1] - 33:4
**REICHLE** [1] - 33:4
**reimpose** [1] - 26:19
**rejects** [1] - 25:25
**relatedly** [1] - 18:2
**relationship** [2] -

28:25, 31:7
**relative** [1] - 29:8
**relevant** [1] - 10:11
**relied** [1] - 21:16
**relief** [6] - 35:11, 35:14, 35:18, 36:3, 38:6, 39:13
**remain** [5] - 7:8, 8:14, 8:16, 8:22, 8:24
**remaining** [1] - 7:24
**remind** [1] - 39:21
**remove** [1] - 21:10
**removing** [1] - 27:5
**render** [1] - 4:11
**renders** [2] - 17:24, 39:20
**Renee** [4] - 1:24, 44:3, 44:15, 44:16
**repeated** [1] - 14:22
**repetition** [1] - 36:4
**reply** [1] - 3:4
**report** [5] - 21:13, 21:17, 21:18, 23:8, 42:5
**reported** [1] - 44:6
**reporter** [4] - 4:23, 5:10, 5:19, 39:24
**REPORTER** [1] - 1:23
**Reporter** [2] - 44:3, 44:17
**reports** [1] - 23:11
**representative** [1] - 7:13
**required** [5] - 14:12, 14:16, 15:25, 16:5, 30:15
**requires** [1] - 22:4
**requiring** [1] - 14:12
**reserved** [1] - 40:11
**resolution** [1] - 21:6
**resolve** [2] - 25:3, 26:22
**resolved** [1] - 9:20
**resources** [1] - 24:5
**respect** [23] - 4:12, 6:18, 6:21, 6:23, 7:7, 7:11, 9:7, 9:16, 11:5, 16:18, 18:6, 18:7, 18:21, 19:4, 27:7, 32:4, 33:21, 36:18, 36:20, 37:21, 38:11, 38:17
**respects** [1] - 23:25
**respond** [1] - 19:23
**response** [1] - 28:2
**responses** [1] - 31:1
**responsibility** [2] - 26:25, 29:18
**responsible** [2] - 14:11, 15:3

**responsive** [1] - 20:14
**rest** [1] - 27:1
**restate** [1] - 37:5
**result** [3] - 21:20, 26:18, 34:5
**results** [1] - 24:1
**return** [1] - 10:7
**review** [1] - 36:4
**revisit** [1] - 17:25
**rights** [4] - 14:6, 28:23, 32:22, 34:15
**rises** [1] - 31:23
**risk** [12] - 15:12, 22:17, 26:8, 27:25, 28:18, 30:2, 30:9, 31:14, 31:21, 35:6, 35:7, 36:1
**Riverside** [1] - 36:6
**RMR** [2] - 1:24, 44:16
**road** [1] - 41:18
**roadmap** [1] - 40:24
**Rockville** [3] - 2:4, 2:7, 2:13
**room** [9] - 12:10, 14:20, 15:13, 22:16, 30:19, 31:19, 34:4, 34:24, 35:6
**rooms** [2] - 12:7, 23:8, 30:16
**Rosa** [1] - 26:10
**ROWAN** [1] - 2:3
**RPR** [1] - 1:24, 44:16
**Ruff** [4] - 3:14, 3:16, 3:20, 3:21
**RUFF** [4] - 1:20, 3:14, 3:17, 3:21
**Rule** [1] - 10:5
**rule** [4] - 4:20, 9:9, 20:22, 36:3
**rules** [3] - 8:11, 14:12, 24:16
**ruling** [3] - 6:13, 6:14, 37:15
**rulings** [3] - 36:13, 36:14, 40:5

## S

**safety** [3] - 16:2, 16:8, 33:25
**satisfactory** [1] - 21:20
**satisfied** [3] - 23:14, 24:12, 34:1
**save** [1] - 42:9
**schedule** [1] - 42:8
**scheduled** [1] - 40:14
**scheduling** [1] - 40:5
**School** [2] - 13:10, 22:11

**school** [13] - 11:16, 14:13, 20:4, 21:8, 21:12, 21:13, 21:14, 21:17, 22:17, 22:18, 33:9, 33:24, 35:16
**school's** [1] - 16:4
**School's** [1] - 13:11
**Schools** [1] - 12:4
**schools** [3] - 23:9, 23:20, 35:1
**scorecard** [1] - 5:24
**seats** [1] - 3:3
**second** [11] - 7:1, 10:19, 10:25, 11:11, 17:5, 19:10, 24:14, 27:15, 28:1, 28:14, 36:24
**Section** [2] - 24:20, 26:6
**security** [3] - 16:2, 16:8, 33:25
**see** [7] - 6:4, 26:17, 39:17, 41:2, 41:17, 42:3, 42:25
**seek** [1] - 17:3
**Segerman** [1] - 11:24
**sense** [1] - 33:19
**separate** [1] - 18:10
**separately** [1] - 34:10
**September** [1] - 23:5
**sequelae** [1] - 18:23
**sequence** [1] - 3:19
**serious** [1] - 39:17
**Services** [1] - 25:16
**set** [1] - 41:10
**settlement** [1] - 43:5
**Seven** [9] - 16:15, 16:17, 17:4, 19:1, 24:18, 37:22, 38:2, 38:18, 39:4
**several** [2] - 4:17, 23:25
**severe** [2] - 19:12, 24:10
**sex** [1] - 19:11
**sexual** [8] - 11:20, 21:14, 21:16, 23:8, 23:23, 31:18, 33:10, 33:20
**shall** [1] - 10:2
**Shaw** [1] - 28:7
**sheet** [3] - 18:4, 18:5, 41:21
**shields** [1] - 32:20
**shoes** [1] - 11:18
**short** [1] - 40:22
**shorthand** [1] - 44:9
**show** [3] - 26:7, 28:3, 31:11
**shown** [2] - 23:19,

24:13

**shows** [1] - 10:2

**sic** [3] - 20:17, 35:2, 39:8

**side** [1] - 27:10

**simply** [1] - 21:17

**sit** [1] - 41:19

**situation** [1] - 41:20

**Six** [9] - 8:23, 13:4, 13:12, 13:16, 16:3, 16:12, 38:1, 38:5, 39:11

**Smith** [1] - 34:15

**so-called** [1] - 33:8

**Social** [1] - 25:16

**social** [1] - 24:11

**sometime** [1] - 41:15

**somewhat** [1] - 5:6

**soon** [1] - 40:20

**sorry** [5] - 3:16, 3:18, 15:21, 37:4, 42:21

**sort** [2] - 41:3, 41:11

**Sosna** [1] - 36:4

**SOSNA** [1] - 36:5

**sought** [1] - 37:18

**South** [1] - 1:21

**SOUTHERN** [1] - 1:3

**Spaulding** [1] - 11:6

**speaking** [1] - 6:16

**speaks** [1] - 34:9

**Special** [1] - 11:25

**special** [2] - 33:24, 41:21

**specific** [4] - 12:18, 21:5, 33:7, 36:12

**specifically** [2] - 15:11, 17:19

**spending** [2] - 17:11, 17:13

**splitting** [1] - 33:15

**staff** [1] - 21:14

**standard** [5] - 10:1, 13:20, 22:8, 31:9, 34:13

**standing** [4] - 7:13, 7:18, 35:15, 35:24

**state** [12] - 9:8, 9:17, 25:8, 26:2, 26:7, 26:8, 27:14, 37:3, 37:14, 37:17, 38:12, 39:9

**state-created** [11] - 9:8, 9:17, 25:8, 26:2, 26:7, 27:14, 37:3, 37:14, 37:17, 38:12, 39:9

**statements** [1] - 44:8

**STATES** [2] - 1:1, 1:10

**States** [1] - 44:4

**status** [1] - 42:5

**statute** [1] - 16:25

**statutes** [1] - 17:10

**statutory** [1] - 32:22

**stay** [1] - 6:12

**stenographically** [1] - 44:6

**STENOTYPE** [1] - 1:25

**still** [3] - 37:5, 40:13, 43:7

**stipulate** [1] - 7:24

**stood** [1] - 11:17

**Stracke** [1] - 13:22

**STRACKE** [1] - 13:22

**Street** [3] - 1:21, 2:12, 2:17

**stronger** [1] - 23:1

**Stroud** [1] - 28:7

**student** [8] - 12:5, 15:15, 19:9, 19:10, 23:12, 27:6, 33:10

**student-on-student** [1] - 33:10

**students** [18] - 11:10, 11:21, 14:16, 15:16, 21:13, 21:16, 22:23, 23:13, 28:24, 30:9, 31:5, 31:7, 33:25, 34:1, 35:4, 42:18

**study** [4] - 26:17, 26:19, 26:20, 27:4

**subjected** [1] - 19:11

**submit** [1] - 41:12

**subordinate** [4] - 27:24, 28:17, 30:1, 30:24

**subordinate/ supervisor** [1] - 31:7

**subordinates** [3] - 15:6, 28:12, 31:18

**subordinates'** [1] - 31:19

**substantively** [1] - 39:25

**sue** [6] - 13:8, 13:9, 13:10, 13:11, 13:12, 25:13

**sued** [6] - 10:19, 13:6, 14:4, 14:5, 16:16, 24:23

**suffer** [2] - 35:17, 35:19

**suffered** [8] - 11:3, 11:8, 12:11, 14:21, 21:16, 22:2, 24:10, 28:6

**suffice** [1] - 27:2

**sufficient** [4] - 12:25, 15:17, 24:13, 31:13

**sufficiently** [3] -

19:12, 28:2, 33:1

**suggest** [2] - 23:11, 30:11

**suggested** [1] - 25:14

**suggestion** [1] - 25:25

**suggests** [3] - 17:12, 20:20, 24:9

**Suite** [2] - 1:16, 2:17

**SULLIVAN** [1] - 2:9

**Sullivan** [43] - 4:6, 6:25, 7:3, 8:16, 9:5, 9:6, 13:8, 13:14, 14:10, 16:10, 20:5, 24:22, 25:5, 27:18, 27:19, 28:9, 28:11, 28:15, 29:3, 29:6, 29:9, 29:11, 29:20, 29:24, 30:12, 30:24, 31:4, 32:13, 34:6, 34:10, 35:9, 36:23, 37:2, 37:7, 37:13, 37:24, 37:25, 38:9, 38:13, 38:21, 38:24, 39:1, 39:7

**Sullivan's** [3] - 14:14, 32:1, 34:22

**summarize** [1] - 23:1

**summarizes** [1] - 14:7

**summarizing** [1] - 36:13

**summary** [49] - 4:12, 6:18, 6:21, 6:22, 6:25, 7:4, 7:23, 8:10, 8:13, 9:1, 9:2, 9:5, 9:12, 9:15, 9:18, 10:1, 10:2, 10:14, 10:21, 11:4, 12:25, 13:2, 13:14, 16:9, 16:13, 16:18, 17:2, 17:22, 18:25, 21:6, 24:17, 25:1, 25:3, 25:5, 25:7, 25:9, 27:12, 29:22, 29:23, 30:7, 32:2, 32:5, 32:8, 34:7, 35:8, 36:17, 36:19, 36:23, 38:8

**supervise** [6] - 12:9, 12:21, 15:22, 15:24, 30:25, 31:19

**supervised** [3] - 14:16, 28:17, 34:24

**supervising** [1] - 30:11

**supervision** [9] - 12:5, 14:20, 15:4, 15:10, 16:5, 30:14, 30:19, 35:6, 44:10

**supervisor** [3] - 27:23, 28:13, 29:4

supervisor's [2] - 28:1, 28:5

**supervisor/ subordinate** [1] - 28:25

**supervisors** [5] - 28:11, 28:16, 29:7, 29:10, 29:21

**supervisory** [16] - 14:23, 15:8, 25:5, 25:8, 25:10, 27:15, 27:16, 27:21, 31:4, 31:9, 31:24, 32:2, 32:6, 32:9, 38:2, 39:6

**Supp** [2] - 12:17, 35:22

**Supreme** [10] - 4:15, 17:7, 17:8, 19:25, 25:17, 32:24, 33:4, 34:16, 36:6, 36:7

**survive** [1] - 32:15

**suspending** [1] - 17:10

**symptoms** [1] - 24:10

**system** [1] - 14:10

**system-wide** [1] - 14:10

**systematic** [1] - 14:14

**T**

**table** [1] - 4:4

**tacit** [1] - 28:3

**tasks** [1] - 29:18

**taunted** [1] - 22:22

**teacher** [1] - 21:17

**team** [4] - 15:22, 15:24, 21:11, 26:16

**teammates** [1] - 22:23

**teenage** [1] - 12:9

**Ten** [14] - 9:14, 9:16, 24:19, 24:23, 25:9, 27:19, 32:9, 37:4, 37:16, 38:3, 38:6, 38:14, 39:7, 39:12

**terminating** [1] - 26:23

**terms** [2] - 26:13, 40:16

**testimony** [1] - 44:8

**THE** [31] - 1:1, 1:2, 1:10, 1:13, 1:18, 2:2, 2:9, 2:10, 2:15, 3:2, 3:5, 3:9, 3:16, 3:18, 4:2, 4:10, 6:7, 6:11, 40:6, 40:9, 40:15, 41:2, 41:7, 41:9, 42:7, 42:14, 42:21, 42:25, 43:3, 43:9,

43:11

**theirs** [1] - 40:13

**themselves** [3] - 7:21, 31:12, 31:18

**theories** [4] - 24:14, 25:8, 25:12, 37:9

**theory** [21] - 9:8, 9:17, 25:6, 25:11, 26:3, 26:7, 27:14, 27:21, 28:22, 29:23, 31:5, 31:13, 31:24, 32:3, 32:9, 37:3, 37:14, 37:17, 38:12, 39:6, 39:9

**thereafter** [1] - 44:10

**therefore** [3] - 25:24, 35:25, 36:12

**thereof** [1] - 44:13

**thinking** [1] - 41:6

**third** [7] - 11:1, 11:13, 11:15, 19:11, 24:14, 28:4, 28:22

**THOMAS** [1] - 2:3

**threat** [1] - 35:4

**threatened** [2] - 22:23, 23:6

**three** [4] - 24:5, 28:9, 41:4, 41:7

**Three** [8] - 8:18, 13:9, 13:15, 14:18, 16:10, 37:25, 38:5, 39:1

**TIMOTHY** [1] - 1:15

**Timothy** [1] - 3:11

**Title** [29] - 16:15, 16:16, 16:23, 17:6, 17:11, 17:14, 17:17, 17:18, 18:10, 18:13, 18:22, 19:1, 19:4, 19:6, 19:19, 20:3, 21:18, 21:23, 22:4, 22:10, 22:15, 23:16, 24:18, 37:19, 37:22, 38:2, 38:15, 38:16, 39:3

**today** [14] - 4:11, 4:14, 4:24, 5:3, 5:10, 5:13, 6:8, 6:13, 6:16, 6:17, 8:11, 12:23, 33:11, 36:14

**together** [3] - 21:3, 41:12, 42:1

**Tom** [1] - 3:25

**tomorrow** [2] - 5:3, 36:14

**tonight** [1] - 39:16

**took** [2] - 14:15, 26:20

**training** [12] - 12:6, 14:12, 14:15, 15:4, 15:11, 15:25, 16:6, 29:15, 30:16, 31:1,

34:23
**transcribed** [2] - 5:10, 44:10
**transcribes** [1] - 5:19
**transcribing** [1] - 37:10
**TRANSCRIPT** [1] - 1:9
**transcript** [3] - 5:17, 6:10, 44:6
**TRANSCRIPTION** [1] - 1:25
**transcription** [1] - 44:11
**trial** [9] - 12:14, 17:25, 40:13, 40:20, 40:23, 41:4, 41:9, 42:15, 42:22
**true** [2] - 35:18, 44:5
**try** [2] - 5:23, 42:1
**TURLINGTON** [1] - 2:11
**Turlington** [1] - 4:4
**turn** [2] - 10:18, 29:2
**turns** [4] - 13:4, 16:15, 19:3, 24:19
**Two** [10] - 8:15, 13:4, 13:8, 13:14, 14:9, 16:10, 37:25, 38:5, 39:1, 39:11
**two** [6] - 5:18, 18:2, 25:12, 26:1, 37:9, 40:11
**types** [2] - 4:25, 36:9
**typically** [2] - 12:16, 18:3

## U

**U.S** [9] - 19:25, 20:10, 25:17, 32:24, 33:4, 33:22, 34:16, 36:5, 36:7
**U.S.C** [1] - 24:20
**ultimately** [1] - 18:20
**unconstitutionally** [1] - 25:19
**under** [24] - 16:23, 16:25, 17:6, 17:10, 17:13, 18:12, 18:19, 19:1, 19:6, 21:8, 21:23, 24:14, 24:20, 25:12, 27:3, 27:15, 27:21, 31:12, 31:23, 34:13, 37:20, 38:16, 38:18, 44:10
**undermines** [1] - 24:3
**understood** [1] - 33:2
**UNITED** [2] - 1:1, 1:10
**United** [1] - 44:4
**University** [2] - 16:25,

19:7
**unlikely** [1] - 41:17
**unnecessary** [1] - 17:22
**unopposed** [4] - 9:1, 9:19, 25:2, 37:12
**unreasonable** [5] - 27:25, 28:18, 30:2, 31:14, 31:21
**unsupervised** [1] - 15:13
**unusual** [1] - 4:14
**up** [2] - 6:14, 25:13
**urging** [1] - 33:13

## V

**variations** [1] - 5:11
**variety** [1] - 24:10
**various** [5] - 4:12, 6:18, 8:25, 17:20, 17:23
**verdict** [5] - 10:7, 17:24, 18:4, 18:5, 41:21
**victim** [4] - 22:5, 22:20, 23:23, 24:1
**victim's** [2] - 24:3, 24:6
**view** [4] - 20:16, 27:9, 36:10, 40:4
**viewed** [1] - 31:22
**views** [1] - 10:15
**Vincent** [3] - 6:24, 7:2, 36:22
**VINCENT** [1] - 2:9
**Vinny** [1] - 4:6
**violate** [1] - 32:21
**violated** [1] - 32:19
**violates** [1] - 33:3
**violating** [1] - 32:18
**violation** [3] - 18:14, 18:16, 19:19
**violations** [5] - 7:14, 16:17, 18:10, 28:23, 34:5
**voice** [1] - 35:13
**voir** [1] - 41:22
**vs** [12] - 11:24, 16:25, 17:7, 19:7, 22:11, 25:16, 26:10, 33:21, 33:22, 34:16, 36:5, 36:6

## W

**Wade** [1] - 34:16
**WALLICH** [1] - 2:9
**Wallich** [42] - 4:6, 8:22, 9:15, 13:12,

13:15, 15:6, 15:22, 16:11, 20:6, 24:23, 25:10, 27:20, 28:9, 28:11, 28:15, 29:3, 29:6, 29:10, 29:17, 29:21, 29:25, 30:10, 30:17, 30:23, 30:24, 31:4, 32:13, 34:7, 34:10, 35:9, 37:4, 37:16, 37:24, 38:1, 38:3, 38:9, 38:13, 38:21, 38:25, 39:2, 39:7
**Wallich's** [5] - 6:25, 7:3, 32:8, 35:5, 36:23
**wanton** [7] - 13:21, 14:5, 14:17, 14:24, 15:18, 16:1, 16:7
**warning** [1] - 12:6
**ways** [1] - 17:23
**WEDNESDAY** [1] - 1:11
**weeks** [2] - 41:4, 41:7
**Wellham** [1] - 33:22
**Westlaw** [1] - 11:23
**whole** [1] - 42:9
**wide** [1] - 14:10
**William** [1] - 3:23
**WILLIAM** [1] - 1:20
**willing** [1] - 40:16
**witnesses** [1] - 44:8
**Wood** [2] - 2:4, 2:7
**Wright** [1] - 33:22
**writes** [1] - 4:23
**written** [3] - 4:18, 5:3, 36:13

## Y

**years** [2] - 15:23, 36:8
**York** [1] - 25:16
**young** [1] - 7:9
**yourselves** [1] - 3:9

## Z

**zero** [1] - 33:8